UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK DIMONDSTEIN, | ) |
| 2518 Burgundy Drive | ) |
| Greensboro, North Carolina 27407 | ) |
| TONY McKINNON, | ) |
| 611 Longwood Place | ) |
| Fayetteville, North Carolina 28314 | ) |
| and | ) |
| VIOLETTA WARD | ) No. |
| 4220 Colony Road | ) |
| South Euclid, Ohio 44121 | ) |
| Plaintiffs, | ) |
| v. | ) |
| AMERICAN POSTAL WORKERS UNION, | ) |
| 1300 L Street NW | ) |
| Washington, D.C. 20005 | ) |
| Defendant. | ) |

**VERIFIED COMPLAINT**

1. In this action, members of a national labor union who are running for union office seek to enforce their legal right to communicate with their fellow members about their candidacy by having the union disseminate their campaign literature, at the members' own expense, using more than 20,000 email addresses that the union has accumulated and that the union itself uses to communicate with the membership. Because the election ballots will be

mailed to the membership as early as September 10, 2013, plaintiffs seek a preliminary injunction compelling the union to send their literature to union members by email.

2. The Court has jurisdiction of this case under 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 481(c).

**PARTIES**

3. Plaintiffs Mark Dimondstein, Tony McKinnon and Violetta Ward are members of defendant American Postal Workers Union ("APWU") within the meaning of 29 U.S.C. § 402(o).

4. Defendant APWU is a labor organization within the meaning of 29 U.S.C. § 402(i).

**FACTS**

5. This summer, the APWU is holding its triennial election of officers. Plaintiff Dimondstein is running for APWU President; plaintiff McKinnon is running for National Industrial Relations Director; and plaintiff Violetta Ward is running for Secretary-Treasurer. Each of these positions is an "officer" within the meaning of 29 U.S.C. § 402(n). Ballots in that election will be mailed as early as September 10, 2013.

6. Plaintiffs are running (with several other candidates) as a slate in opposition to the incumbent leadership. Encapsulating their main platform, which is to put the interests of the members of the union first, they named the slate "APWU Members First."

7. Although plaintiffs are campaigning at the entrances to workplaces spread throughout the United States and plan to send a postal mailing to all members of the union, those methods of campaigning are expensive. For example, the cost of printing a single sheet

of paper on both sides, stuffing it into an envelope, and mailing it to the entire membership is well in excess of $100,000. Moreover, plaintiffs have been informed that the mailing house does not yet have the mailing list of members.

8. The APWU elicits email addresses from its members on its membership application form, and by asking members to provide their email addresses, the union can communicate with them more easily. For example, the APWU sends a periodic "legislative update" by email to more than 20,000 members. This update, like the union's bi-monthly magazine that is sent by postal mail to members, prominently features the activities of the union's incumbent officers, against whom plaintiffs are running in the election.

9. Plaintiffs want to be able to send their campaign literature to the union membership by email as well, because email is an effective but much less expensive means of communicating about their candidacy.

10. Accordingly, on July 3, 2013, plaintiff Dimondstein sent the APWU a request to use the union's list of member email addresses to send his own campaign literature, and literature for the rest of the APWU Members First slate, to the APWU's email list. He also asked for information about how the email addresses can be broken into separate categories of membership, because he wanted to be able to send separate campaign communications to members in specific geographic, job or other categories, if possible. A copy of this request is attached as Exhibit A.

11. The APWU never responded to this request, although Dimondstein reminded the union, through counsel, that his request was pending.

12. On July 19, 2013, Dimondstein appealed to the APWU's Election Appeals Committee, treating the union's refusal to respond as an effective denial of his request. A copy of this appeal is attached as Exhibit B.

14. The APWU itself has never responded to Dimondstein's appeal, but its general counsel, Darryl Anderson, told Dimondstein's counsel that the APWU was unwilling to comply with the request.

**CLAIM FOR RELIEF**

15. Section 401(c) of the Labor Management Reporting and Disclosure Act of 1959, ("LMRDA"), 29 U.S.C. § 481(c), requires unions to comply with all reasonable requests from members to distribute their campaign literature to all members by mail or otherwise.

16. The United States Department of Labor, which enforces the officer election provisions of the LMRDA, advises unions that to the extent that they have email addresses for union members, they must comply with reasonable requests to distribute campaign literature by email. *See* http://www.dol.gov/olms/regs/compliance/Electionsfaqgen.htm#11.

17. Dimondstein's request that his campaign literature, and literature from his slate, be distributed by email was a reasonable request. By refusing to grant the request, the APWU violated section 401(c) of the LMRDA.

18. The violation of the LMRDA is causing irreparable injury to plaintiffs by preventing them from communicating, inexpensively and effectively, with a significant segment of the union electorate.

WHEREFORE, Plaintiff prays the Court to enter a judgment as follows:

A.  Preliminarily and permanently enjoining defendant to mail plaintiffs' campaign literature, at plaintiffs' expense, to its entire list of email addresses, and such segments of the email list as may reasonably be segregated;

B.  Requiring defendant to inform plaintiff of the categories by which its email list(s) may readily be broken down;

C.  Declaring that section 401(c) requires the APWU to make available to candidates for the mailing of campaign literature all member email addresses that it or its officers or employees have, in their capacity as such, accumulated, so long as the candidates pay the osts of the mailings;

D.  Awarding plaintiffs their reasonable attorney fees and costs; and

E.  Awarding such other relief as may be just and proper.

Respectfully submitted,

  /s/ Paul Alan Levy
Paul Alan Levy (DC Bar No. 946400)
Jehan A. Patterson (DC Bar 1012119)

Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-1000 (voice)
(202) 588-7795 (facsimile)
plevy@citizen.org
jpatterson@citizen.org

August 9, 2013

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I hereby certify under penalty of perjury that the foregoing complaint is true and correct. Executed on August 8, 2013.

_Mark Dimondstein_
Mark Dimondstein

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I hereby certify under penalty of perjury that the foregoing complaint is true and correct. When my fellow candidate Mark Dimondstein sought the right for our slate to do campaign mailings by electronic mail, he was writing on my behalf as well as his own. Executed on August 8, 2013.

*[signature]*