UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK DIMONDSTEIN, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 13-1228 |
| ) | |
| AMERICAN POSTAL WORKERS UNION, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE GRANTED. . . 3

    A.    Plaintiffs Are Likely to Succeed on the Merits. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    To the Extent That a Balancing of the Equities Is Required, Those Factors
           Plainly Favor Injunctive Relief. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

**CASES**

*Atchison, Topeka & S.F. Railway Co. v. Lennen*,
    640 F.2d 255 (10th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bauman v. Presser*,
    117 LRRM 2393, 1984 WL 3255 (D.D.C. Sept. 19, 1984),
    *app. dismissed*, 119 LRRM 2247, 1985 WL 202619 (D.C. Cir. 1985).. . . . . . . . . . . . 3, 12

*Bliss v. Holmes*,
    721 F.2d 156 (6th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Brennan v. Variety Artists*,
    87 LRRM 2607, 1974 WL 1173 (S.D.N.Y. Sept. 13, 1974). . . . . . . . . . . . . . . . . . . . . . . 9

*Brown v. Lowen*,
    Civ. No. HAR-88-1994 (D. Md. July 26, 1988)*,*
    *aff'd*, 889 F.2d 58 (4th Cir. 1989),
    *aff'd*, 498 U.S. 466 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*\*Brown v. Lowen*,
    889 F.2d 58 (4th Cir. 1989),
    *aff'd*, 498 U.S. 466 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

*Chao v. HERE Local  54*,
    166 F. Supp. 2d 109 (D.N.J. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Chao v. UFCW Local 951*,
    2007 WL 208537, 181 LRRM 2420 (W.D. Mich. Jan. 24, 2007). . . . . . . . . . . . . . . . . . 5

*Crowley v. Teamsters Local 82*,
    679 F.2d 978 (1st Cir. 1982),
    *rev'd,* 467 U.S. 526 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Department of Labor v. Teamsters Local 783*,
    1982 WL 2095 (W.D. Ky. July 27, 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Elrod v. Burns*,
    427 U.S. 347 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hall v. Cole*,
        412 U.S. 1 (1973).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hummel v. Brennan*,
        469 F. Supp. 1180 (E.D. Pa. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*\*International Organization of Masters, Mates & Pilots v. Brown*,
        498 U.S. 466 (1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Illinois Bell Telegraph Co. v. Illinois Commerce Committee*,
        740 F.2d 566 (7th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lorangeteli v. Critelli*,
        853 F.2d 186 (3d Cir. 1988).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Marshall v. Laborers Local 478*,
        461 F. Supp. 185 (S.D. Fla. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*\*Mims v. Teamsters Local 728*,
        821 F.2d 1568 (11th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*New Directions v. Seda*,
        867 F. Supp. 242 (S.D.N.Y. 1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

*Ostrowski v. Utility Workers Local 1-2*,
        530 F. Supp. 208 (S.D.N.Y. 1980).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Reno v. American Civil Liberties Union*,
        521 U.S. 844 (1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Sherley v. Sebelius*,
        644 F.3d 388 (D.C. Cir. 2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Trailer Train Co. v. State Board of Equalization*,
        697 F.2d 860 (9th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Federal Deposit Insurance Corp.*,
        881 F.2d 207 (5th Cir.  1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Microsoft Corp.*,
        147 F.3d 935 (D.C. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. San Francisco*,
    310 U.S. 16 (1940).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Teamsters*,
    931 F.2d 177 (2d Cir. 1991).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Teamsters*,
    No. 88 CIV. 4486 (DNE). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Usery v. Masters, Mates & Pilots*,
    538 F.2d 946 (2d Cir. 1087).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATUTES, LEGISLATIVE MATERIALS, AND RULES**

Labor Management Reporting and Disclosure Act of 1959
    29 U.S.C §§ 401 *et seq*.

    Title IV, 29 U.S.C. §§ 481 *et seq*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8
    *Section 401(c), 29 U.S.C. § 481(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 6, 8, 10
    Section 402(a), 29 U.S.C. § 482(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    Section 402(a)(2), 29 U.S.C. § 482(a)(2).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    Section 402(b), 29 U.S.C. § 482(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

2 NLRB, *Legislative History of the LMRDA* (1959). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 C.F.R. § 452.68. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**MISCELLANEOUS**

Hartley, *The Framework of Democracy in Union Government*,
    32 Cath. L. Rev. 13 (1982).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Jacobs & Spring, *Fair Coverage in Internal Union Periodicals*,
    4 Indus. Rel L. J. 204 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Summers, *Democracy In A One-Party State: Perspectives From Landrum-Griffin,*
    43 Md. L. Rev. 93 (1984).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Teamster Election Supervisor, *Advisory on Rights of Candidates to Distribute Campaign Literature to Members*
    http://www.ibtvote.org/notices_advisories/Advisory_on_Rights_of_Candidates_
    to_Distribute_ Campaign_Literature_to_Members_01_07_11.PDF. . . . . . . . . . . . . . . . 8

US Deparment of Labor, *Frequently Asked Questions (FAQs) Concerning*
    *Union Officer Elections*
        http://www.dol.gov/olms/regs/compliance/Electionsfaq. . . . . . . . . . . . . . . . . . . . . . . . . . 7

In this action, members of the American Postal Workers Union who are running for office seek to enforce their legal right to communicate with their fellow members about their candidacies by having the union disseminate their campaign literature, at their own expense, using more than 20,000 email addresses that the union has accumulated and that the union itself uses to communicate with the membership. Because the ballots in their election will be mailed to the membership as early as September 10, 2013, plaintiffs seek a preliminary injunction compelling the union to send their literature to union members by email.

**FACTS**

Plaintiffs Mark Dimondstein, Tony McKinnon and Violetta Ward are members of defendant American Postal Workers Union, and are running for the offices of President, Industrial Relations Director and Secretary Treasurer in an election this fall. Verified Complaint ¶¶ 3, 5. They are members of a slate called the "APWU Members First Team." *Id.* ¶ 6.

Although plaintiffs have been campaigning at workplaces throughout the country and intend to send campaign literature to union members using the postal mail, such mailings are expensive, costing in excess of $100,000 per mailing. *Id.* ¶ 7. Plaintiffs want to be able to send their several pieces of campaign literature to the union membership by email as well, because email is an effective but much less expensive means of communicating about their candidacy. *Id.* ¶ 9.

The APWU elicits email addresses from its members on its membership application form. By asking existing members to provide their email addresses, the union can communicate with them more easily. For example, the APWU sends a periodic "legislative update" by email to more than 20,000 members. *Id.* ¶ 8. This update, like the union's bi-monthly magazine that is sent by postal mail to members, prominently features the activities of the union's incumbent officers, against whom plaintiffs are running in the election. *Id.*; Dimondstein Affidavit ¶¶ 2-3 and Exhibits C and D.

Accordingly, on July 3, 2013, plaintiff Dimondstein sent the APWU a request to use the member email addresses in the union's possession to send his own campaign literature, and literature for the rest of the APWU Members First slate, to the APWU's email list. He also asked for information about how the email addresses can be broken into separate categories of membership, because he wanted to be able to send separate campaign communications to members in specific geographic, job or other categories, if possible. Verified Complaint ¶ 10. A copy of this request is attached to the Verified Complaint as Exhibit A.

The APWU never responded to this request, although Dimondstein reminded the union, through counsel, that his request was pending. *Id.* ¶ 11. Therefore, on July 19, 2013, Dimondstein sent an appeal to the APWU's Election Appeals Committee, treating the union's refusal to respond as an effective denial of his request. *Id.* ¶ 12. A copy of this appeal is attached to the Verified Complaint as Exhibit B. The APWU itself has never responded to Dimondstein's appeal, but its general counsel, Darryl Anderson, told Dimondstein's counsel that the APWU was unwilling to comply with the request. Verified Complaint ¶ 14; Levy Affidavit Exhibit J.

Because only one month remains before the ballots will be mailed to the union membership, and because experience teaches that members begin returning their ballots soon after they are received, *Bauman v. Presser*, 117 LRRM 2393, 1984 WL 3255, at *5 (D.D.C. Sept. 19, 1984), *app. dismissed*, 119 LRRM 2247, 1985 WL 202619 (D.C. Cir. 1985), plaintiffs now seek a preliminary injunction compelling the union to comply with their request for the right to send campaign literature by email.

**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE GRANTED.**

The issuance of a preliminary injunction depends on the Court's balancing of four factors:

(1) plaintiffs' likelihood of success on the merits of their claim; (2) their irreparable injury should the preliminary injunction not issue; (3) whether the injunction would irreparably injure third parties; and (4) whether the public interest favors the relief requested. *Sherley v. Sebelius*, 644 F.3d 388, 392-393 (D.C. Cir. 2011).

As we show in this memorandum, the law clearly requires the APWU to comply with any reasonable request for the distribution of campaign literature, so long as the requesting candidate is ready to bear the expense of distribution. The APWU has offered no reason to deem the request for email distribution unreasonable. Moreover, plaintiffs are being irreparably injured by their inability to send emails in support of their candidacy and, in any event, when, as here, a statute's effectiveness depends on the issuance of preliminary injunctive relief, the need to show irreparable injury is eliminated or significantly reduced. Finally, because the other factors also militate in favor of granting injunctive relief, plaintiff's motion should be granted.

**A. Plaintiffs Are Likely to Succeed on the Merits.**

The first sentence of section 401(c) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 481(c), provides as follows, in pertinent part:

> Every national . . . labor organization, . . . and its officers, shall be under a duty, enforceable at the suit of any bona fide candidate for office in such labor organization in the district court of the United States in which such labor organization maintains its principal office, to comply with all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization . . ..

As the Supreme Court stated in *International Organization of Masters, Mates & Pilots v. Brown*, 498 U.S. 466, 476 (1991), section 401(c) gives the right to distribute campaign literature a special status among all election rights, and "[a] broad interpretation of the candidate's right to distribute

literature . . . is consistent with the statute's basic purpose." The special role played by section 401(c) rights was explained in more detail by the court of appeals opinion that was affirmed in the *International Organization of Masters, Mates & Pilots* case, *sub nom. Brown v. Lowen*, 889 F.2d 58 (4th Cir. 1989) (en banc), adopting panel opinion at 857 F.2d 216, 218 (4th Cir. 1988):

> Congress recognized that one of the major obstacles to meaningful elections was the inherent advantage of incumbents and it sought to curb the advantage." Summers, *Democracy In A One-Party State: Perspectives From Landrum-Griffin*, 43 Md. L. Rev. 93, 117-118 (1984). When the union bureaucracy has exclusive control of the union membership lists, with addresses, as in this case, and that bureaucracy has continuous contact with the union membership and particularly the local union officers, the advantages of incumbency over any attempt of an insurgent to promote his candidacy before or after the quadrennial nominating convention of the union are obvious. By requiring unions to comply with all reasonable requests of candidates for access to the union lists these advantages of incumbency are reasonably moderated. And it was to provide that very moderation of the advantages of incumbency which was the intention of the Act.

Similarly in this case, the incumbent officers against whom Dimondstein and his slate are running take full advantage of the powers of incumbency to put their accomplishments before the union electorate, at union expense. The bi-monthly magazine carries regular columns from President Guffey, Secretary-Treasurer Powell, and Industrial Relations Director Morris, as well as stories showing their photographs and praising their accomplishments. The very email list that plaintiffs want to use to send out their campaign literature is used by the APWU to transmit weekly messages that include the opinions and activities of the incumbents. Dimondstein Affidavit ¶ 3 and Exhibit D. The ability of union incumbents to deploy the union's own resources in this manner, while contending that anything they do is legitimate "news" and hence not in violation of the statute,[1] is among the reasons why insurgent candidates need access to those same modes of communication

---

[1] Plaintiffs reserve for another day the issue whether these publications violate section 401(c), as in such cases as *New Directions v. Seda*, 867 F. Supp. 242, 245 (S.D.N.Y. 1994).

to have a fair chance to compete in the upcoming union election. *See Brown v. Lowen,* 857 F.2d at 218.

Although no court has yet decided whether to require unions to distribute campaign literature by email, plaintiffs' request is clearly supported by the language of the statute. Unions are obligated to distribute literature "by mail or otherwise." Electronic mail is just as much a form of mail as postal mail, and although Congress obviously had postal mail in mind when it enacted the LMRDA in 1959, the term "mail" extends to other forms of mail that have developed in the intervening years. Moreover, even if email were not "mail" within the language of the statute, the direction to comply with requests for distribution expressly extends beyond "mail" to "otherwise" reasonable means of distribution.

Extending the duty to distribute campaign literature to the use of members' email addresses is also consistent with other cases decided under section 401(c). For example, in two cases, courts have decided that unions' obligation to refrain from discriminating with respect to the use of "lists of members" in union elections extends to lists of members' telephone numbers. *Chao v. UFCW Local 951*, 2007 WL 208537, 181 LRRM 2420 (W.D. Mich. Jan. 24, 2007); *Chao v. HERE Local 54*, 166 F. Supp.2d 109, 122-123 (D.N.J. 2001). In *Mims v. Teamsters Local 728*, 821 F.2d 1568 (11th Cir. 1987), the district court required a union to allow members to minimize the cost of doing a postal mailing of campaign literature to the membership by using a mailing house that could perform mailing tasks more cheaply than the union's own secretarial staff. *Id.* at 1568-1569; No. C-86-454A (N.D. Ga. Mar. 3, 1986) (copy attached). The Eleventh Circuit held that establishment of this right created a common benefit to the union membership justifying an award of attorney fees under the common benefit doctrine of *Hall v. Cole*, 412 U.S. 1 (1973). 821 F.2d at 1571. Similarly,

*Department of Labor v. Teamsters Local 783*, 1982 WL 2095 (W.D. Ky. July 27, 1982), held that a union violated a candidate's rights under 401(c) by overcharging for the mailing of union literature, which had the effect of deterring the candidate from sending out as much literature as he would have preferred.

In the APWU, the postal mailing of a single, double-sided sheet of campaign literature to the entire union electorate costs in excess of $100,000. Verified Complaint ¶ 7; Dimondstein Affidavit Exhibit I. Only several communications can give insurgent candidates a chance to overcome the considerable advantages of incumbency. Requiring unions to allow the distribution of campaign literature by email is vital to creating a level playing field as Congress intended.

For the same reason, the argument advanced by the union's counsel in explaining why the union would not allow email campaigning—that the union is not allowing any candidate to use the email list, Levy Affidavit, Exhibit J—cannot succeed. First, section 401(c) requires **both** non-discrimination in the use of lists of members **and** compliance with reasonable requests to distribute campaign literature. Second, there is no evidence that any other candidate has requested use of union-acquired emails to campaign, and if the Court grants an injunction, the union can easily notify other candidates of the list's availability. But most important, commentators on problems of union democracy have frequently observed that incumbents, by repeatedly communicating to the union membership their own views about the problems facing the union and their proposals for solving them, have the opportunity to set the agenda for discussion of union affairs in a way that favors their own program and their own re-election. Hartley, *The Framework of Democracy in Union Government*, 32 Cath. L. Rev. 13, 78-79 (1982); Jacobs & Spring, *Fair Coverage in Internal Union Periodicals*, 4 Indus. Rel. L. J. 204, 206-215 (1981). The very title of Professor Summers' article

cited above, *Democracy in a One-Party State*, encapsulates the problem that requires unions to allow campaigning by email if only because it gives the ordinary member fair chance to speak with "a voice that resonates farther than it could from any soapbox." *Reno v. ACLU*, 521 U.S. 844, 870 (1997).

The Secretary of Labor, to whom Congress delegated the enforcement of Title IV of the LMRDA, advises unions that their obligation to distribute campaign literature in compliance with reasonable requests from candidates extends to requests to campaign by email. In the Frequently Asked Questions (FAQs) Concerning Union Officer Elections, the Secretary advises unions as follows:

> Generally, if the candidate's request for an alternative method of distributing campaign literature is a reasonable one, the union is required to make the distribution. Accordingly, OLMS advises unions to comply with a candidate's reasonable request to distribute campaign literature to the membership through e-mail if the union uses e-mail to disseminate information to its members.

http://www.dol.gov/olms/regs/compliance/Electionsfaqg.en.htm. Although the Secretary's position is not binding, it is entitled to consideration by the Court "and is not to be lightly disregarded." *Brown v. Lowen*, 857 F.2d at 217.

Similarly, the Election Supervisor in the Teamsters union, exercising his authority under a consent decree between the United States and the International Brotherhood of Teamsters, *United States v. Teamsters*, No. 88 CIV. 4486 (DNE) (S.D.N.Y.), to apply the LMRDA as well as the Teamsters Constitution, *see United States v. Teamsters*, 931 F.2d 177 (2d Cir. 1991), has required the union to make available its email lists for candidates to exercise their legal right to send campaign literature to the membership at their own expense. http://www.ibtvote.org/notices _advisories/Advisory_on_Rights_of_Candidates_to_Distribute_Campaign_Literature_to_Members

_01_07_11.PDF. To be sure, because the Teamster Election Supervisor applies that union's constitution as well as Title IV, it is often not possible to draw precise analogies between the Teamster Election Rules and Title IV elections in other union. However, the elaboration of Title IV rights in this context has value in pointing the way toward a proper construction of the statute.

In addition to requiring the union to comply with plaintiffs' request to distribute their campaign literature by email, the Court should also require the APWU to identify for plaintiffs any categories or classifications by which the union's collection of membership email addresses is maintained, so that plaintiffs can take advantage of their right to have different email messages sent to different parts of the union membership. The Secretary of Labor's Interpretive Guidelines for the conduct of union elections guarantee candidates' right of "[d]istribution to less than full membership":

> Although section 401(c) specifies distribution to "all members in good standing," a labor organization must also honor requests for distribution of literature to only a portion of the membership if such distribution is practicable. Each candidate may choose his own ways of campaigning for election according to his own ingenuity and resources. For example, some candidates . . . may want to appeal directly to the membership or parts thereof in an effort to influence particular constituencies . . . .

29 C.F.R. § 452.68.

Plaintiffs cannot exercise this right unless and until the union tells them the categories by which the email list is maintained; the Court should order the APWU to provide this information.

**B.      To the Extent That a Balancing of the Equities Is Required, Those Factors Plainly Favor Injunctive Relief.**

Plaintiffs will suffer severe and irreparable injury if their motion for a preliminary injunction is not granted. The law makes no provision for plaintiffs to recover damages or other monetary relief for violations of section 401(c), and in any event an award of damages would not substitute for

election to union office. Indeed, other post-election relief would fall short of a meaningful remedy.

Plaintiffs can obtain either a preliminary injunction enforcing their rights before the election, or an order overturning the election by a post-election complaint. A post-election action would likely succeed, because the law presumes that the votes of members who did not received a piece of campaign literature that should have been delivered were affected by the violation. *Usery v. Masters Mates & Pilots*, 538 F.2d 946, 949 (2d Cir. 1087); *Marshall v. Laborers Local 478*, 461 F. Supp. 185, 192 (S.D. Fla. 1978). However, given the time required to exhaust internal union and administrative procedures set forth in section 402(a) and (b) of the LMRDA, post-election suits are typically not brought until at least six months after an election ends (three months of intra-union exhaustion, 29 U.S.C. § 482(a)(2), plus one month to complain to the Secretary, 29 U.S.C. § 482(a), and two months for the Secretary to sue, 29 U.S.C. § 482(b)). Moreover, the statute has been construed to forbid preliminary injunctions in post-election suits. *Brennan v. Variety Artists*, 87 LRRM 2607, 1974 WL 1173 (S.D.N.Y. Sept. 13, 1974). As a result, post-election suits are normally decided only two years after the election has ended, and under section 402(a), the victors in the election under challenge remain in office during this period. Moreover, a successful post-election suit would simply give plaintiffs the right to run for office all over again, repeating all their efforts in a second election campaign when their savings have likely been depleted, thus placing them at a distinct disadvantage, lacking the resources needed to conduct a **second** viable campaign. Moreover, a possible majority of the union's rank and file that might have been persuaded by plaintiffs' campaign literature to elect them could potentially be deprived of the collective bargaining representation that they preferred.

Accordingly, the possibility of a post-election suit cannot give plaintiffs nearly the same relief

as the preliminary injunction that they are seeking. Indeed, it is in the interest of all concerned, the union as well as plaintiffs, for the propriety of the requested emailing to be determined now, rather than after the election. Thus, far from causing irreparable injury to other parties, a preliminary injunction would obviate the need for relief that would be far more costly both to the union and to its membership. Thus, the factor of harm to other parties strongly favors the granting of preliminary relief here.

Moreover, because the candidates themselves must pay the costs of any mailing, there in no possibility of significant injury to defendant itself from the grant of a preliminary injunction. Because the union sends out a weekly email update, it plainly could do this work itself, and the evidence suggests that it would cost only $150 to hire an outside firm to provide multiple unlimited campaign literature distribution by email for any candidate who wants to use that service. Levy Affidavit ¶ 4 and Exhibit L.

In any event, it is questionable whether a specific showing of irreparable injury is required in this case. First, as the Supreme Court has held, deprivations of rights of free speech are presumed to cause severe irreparable injury sufficient to warrant the grant of preliminary relief, *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and this principle has been held applicable to deprivation of union members' rights under the LMRDA. *Hummel v. Brennan*, 469 F. Supp. 1180, 1187 (E.D. Pa. 1979); *Ostrowski v. Utility Workers Local 1-2*, 530 F. Supp. 208, 215 (S.D.N.Y. 1980).

Second, "if a statutory violation is involved and the statute by necessary and inescapable inference requires injunctive relief, the movant is not required to prove the [irreparable] injury and public interest factors." *United States v. Federal Deposit Ins. Corp.*, 881 F.2d 207, 210 (5th Cir. 1989). *Accord United States v. San Francisco*, 310 U.S. 16, 30 (1940); *United States v. Microsoft*

*Corp.,* 147 F.3d 935, 943 (D.C. Cir. 1998); *Illinois Bell Tel. Co. v. Illinois Commerce Comm.*, 740 F.2d 566, 571 (7th Cir. 1984); *Trailer Train Co. v. State Bd. of Equalization*, 697 F.2d 860, 869 (9th Cir. 1983); *Atchison, Topeka & S.F. Ry. Co. v. Lennen*, 640 F.2d 255, 259 (10th Cir. 1981).

The rule is fully applicable to section 401(c), which, by its very nature, authorizes pre-election suits that must necessarily be decided in a preliminary injunction context. Indeed, the need for temporary injunctive relief in such cases was expressly considered by Congress in 1959, when the statute was first enacted. Under the original proposal adopted on the motion of Senator McClellan, any candidate was entitled to obtain a copy of the list of members to be used in furtherance of his candidacy. 2 NLRB, *Legislative History of the LMRDA* 1102, 1119 (1959). Because some Senators were concerned that such lists might be misused, Senator Javits proposed an alternative, under which candidates were guaranteed the right to conduct mailings and were promised protection against discrimination in the use of membership list—a right that was to be enforceable in district court before the election. *Id.* at 1240. Senators McClellan and Mundt objected that incumbents would have possession of the lists to use at their leisure, and that it was too easy for unions to delay their compliance with their obligations until it was too late for the challenger to do anything about it. *Id.* at 1240-1241. Senator Javits, however, repeatedly assured his colleagues that courts act quickly in election cases; "I know that in political elections, courts often act within 5 hours, because such prompt action is required." *Id.* at 1241. Similarly, under the LMRDA, he was confident that "a court will act, and act in time." *Id.* Based on these assurances, the Javits amendment was adopted. *Id.* at 1242.

Given this legislative history, and the general rule that irreparable injury may be presumed from a statutory violation, it is not surprising that preliminary relief enforcing rights under section

401(c) has been granted without express consideration of irreparable injury. *E.g.*, *Bliss v. Holmes*, 721 F.2d 156 (6th Cir. 1983); *Brown v. Lowen*, Civ. No. HAR-88-1994 (D. Md. July 26, 1988) (copy attached). *See also New Directions v. Seda*, 867 F. Supp. 242 (S.D.N.Y. 1994) (motion for preliminary injunction decided as permanent injunction without finding of no adequate remedy at law). In sum, post-election damages are not available and, in any event, would not make plaintiffs whole—the only proper remedy is the injunctive relief afforded by the statute.

Similarly, the public interest lies in vindicating the principles of union democracy, as plaintiffs seek to do here. *Lorangeteli v. Critelli*, 853 F.2d 186, 196 (3d Cir. 1988); *Bauman v. Presser*, 117 LRRM 2393, 2401, 1984 WL 3255 (D.D.C. 1984), *app. dismissed*, 119 LRRM 2247, 1985 WL 202619 (D.C. Cir. 1985).[2]

## CONCLUSION

Plaintiffs' motion for a preliminary injunction should be granted.

                                                          Respectfully submitted,

                                                          /s/ Paul Alan Levy
                                                          Paul Alan Levy
                                                          Jehan A. Patterson

                                                          Public Citizen Litigation Group
                                                          1600 20th Street NW
                                                          Washington, D.C. 20009
                                                          (202) 588-1000 (voice)
                                                          (202) 588-7795 (facsimile)
                                                          plevy@citizen.org
                                                          jpatterson@citizen.org

---

[2] A bond is neither appropriate nor necessary under the circumstances of this case. *Crowley v. Teamsters Local 82*, 679 F.2d 978, 999-1000 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984).

401(c) has been granted without express consideration of irreparable injury. *E.g.*, *Bliss v. Holmes*, 721 F.2d 156 (6th Cir. 1983); *Brown v. Lowen*, Civ. No. HAR-88-1994 (D. Md. July 26, 1988) (copy attached). *See also New Directions v. Seda*, 867 F. Supp. 242 (S.D.N.Y. 1994) (motion for preliminary injunction decided as permanent injunction without finding of no adequate remedy at law). In sum, post-election damages are not available and, in any event, would not make plaintiffs whole—the only proper remedy is the injunctive relief afforded by the statute.

Similarly, the public interest lies in vindicating the principles of union democracy, as plaintiffs seek to do here. *Lorangeteli v. Critelli*, 853 F.2d 186, 196 (3d Cir. 1988); *Bauman v. Presser*, 117 LRRM 2393, 2401, 1984 WL 3255 (D.D.C. 1984), *app. dismissed*, 119 LRRM 2247, 1985 WL 202619 (D.C. Cir. 1985).[2]

## CONCLUSION

Plaintiffs' motion for a preliminary injunction should be granted.

Respectfully submitted,

/s/ Paul Alan Levy
Paul Alan Levy
Jehan A. Patterson

Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-1000 (voice)
(202) 588-7795 (facsimile)
plevy@citizen.org
jpatterson@citizen.org

---

[2] A bond is neither appropriate nor necessary under the circumstances of this case. *Crowley v. Teamsters Local 82*, 679 F.2d 978, 999-1000 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984).

                                                          Attorneys for Plaintiffs

August 9, 2013