UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK DIMONDSTEIN, *et al.*,               )
                                           )
       Plaintiffs,                        )
                                           )
v.                                         )   No. 13-1228
                                           )
AMERICAN POSTAL WORKERS UNION,             )
                                           )
       Defendant.                         )

### AFFIDAVIT OF PAUL ALAN LEVY

1. My name is Paul Alan Levy. I am lead counsel for plaintiffs. This affidavit is made in support of plaintiffs' motion for a preliminary injunction.

2. On July 19, 2013, when there had been no response to plaintiff Dimondstein's appeal from the APWU's failure to respond to his request for the right to send campaign literature by email to such addresses as the union had, I sent a courtesy copy of the appeal to Darryl Anderson the APWU's general counsel. Mr. Anderson told me that the union was unwilling to comply with Dimondstein's request. In response to my question, Mr. Anderson said that there are about 21,000 email addresses on the list to which the union's legislative department sends regular updates. A copy of our email exchange is attached as Exhibit J (for ease of reference, the lettering of exhibits to this affidavit are sequential to exhibits attached to other affidavits).

3. I attach as Exhibit K copies of the district court slip opinions in *Brown v Lowen* and *Mims v. Teamsters Local 728*, retrieved from my files in closed cases.

4. I visited the web site of mailchimp.com/pricing to estimate the cost that would be incurred in having that particular service send emails to the 21,000 email addresses to which the union now sends its legislative update. As shown by Exhibit L, the cost of sending an unlimited number of emails to 21000 email addresses would be $150 per month.

Pursuant to 28 U.S.C. § 1746, I hereby certify under penalty of perjury that the foregoing is true and correct. Executed on August 9, 2013.

_____
Paul Alan Levy

**Paul Alan Levy**

**From:** Darryl Anderson <danderson@odsalaw.com>
**Sent:** Friday, July 19, 2013 12:16 PM
**To:** Paul Alan Levy
**Subject:** RE: Courtesy copy

I am told by the legislative department, which I just called, that the list they use is about 21,000 e-mail addresses including retirees and some non-members.

**From:** Paul Alan Levy [mailto:plevy@citizen.org]
**Sent:** Friday, July 19, 2013 12:06 PM
**To:** Darryl Anderson
**Subject:** RE: Courtesy copy

Thanks for the response. For what fraction of the membership does the APWU have email addresses?

Paul Alan Levy
Public Citizen Litigation Group
1600 - 20th Street, NW
Washington, D.C. 20009
(202) 588-1000
http://www.citizen.org/Page.aspx?pid=396

**From:** Darryl Anderson [mailto:danderson@odsalaw.com]
**Sent:** Friday, July 19, 2013 11:56 AM
**To:** Paul Alan Levy
**Subject:** RE: Courtesy copy
**Importance:** High

Paul, I am truly overwhelmed right now with the need to address postal reform legislation heading for markup early next week. If you folks want to sue us that is your choice.

I do not have the luxury of writing you a letter in response to your lengthy exegesis of the law as you see it.

My thoughts on this include these facts:
- no candidate is given access to the list.
- Pat Fox opined in a March 15, 2012, letter dismissing a complaint that where no candidate is given access, there is no violation.
    - I do not have a copy of the letter, but it is cited in a review of the law I saw recently. I am seeking a copy.
- The e-mail list is a very partial list; it is by no means a list of members.
- Your client has ample access to internet communications. Although I have only looked at the 21st Century Postal Worker web page once or twice, I noticed a link there to the candidate's web page. I also notice that a lot of people have accessed 21st Century.
- There are many other avenues of communication available as well, such as posting an article at a spot linked to the Union's members-only section of their web page. I assume that your client has done that, but I have not looked at any article or looked to see who has posted.

**EXHIBIT J**

- I am told, but I do not know because I do not look at these things, that Bill Burrus, who has his own web page that I think also is linked to the 21st Century web page, has been posting a lot on the internet attacking the incumbent officers and supporting their opponents.
    - Notably, a staff member of the USPS OIG's office mentioned this to me during the Issa hearings on postal legislation this past Wednesday.

I want to assure you that I respect your interest in free speech and union democracy and that I respect your client's right to campaign using any tactic he sees fit. However, this seems to me to be a situation where the Union's processes are very democratic; there is a very long period to campaign; the internet can and is being used freely by candidates; and there is no discrimination in access to union assets. If you take this on, you stand a decent chance of making bad law because your client so obviously does not need this access and will not be helped by it.

Darryl

**From:** Paul Alan Levy [mailto:plevy@citizen.org]
**Sent:** Friday, July 19, 2013 10:54 AM
**To:** Darryl Anderson
**Cc:** Jehan Patterson
**Subject:** Courtesy copy

Darryl, I appreciate that you have a great deal on your plate, but I think we have been very patient in waiting for a response. That patience is wearing thin. Absent a satisfactory response, or an explanation that shows that the request for email delivery of campaign literature is not a reasonable one, you should anticipate that the next communication from us will be a courtesy copy of a complaint.

Paul Alan Levy
Public Citizen Litigation Group
1600 - 20th Street, NW
Washington, D.C. 20009
(202) 588-1000
http://www.citizen.org/Page.aspx?pid=396

**From:** dccanonbw@citizen.org [mailto:dccanonbw@citizen.org]
**Sent:** Friday, July 19, 2013 11:39 AM
**To:** Paul Alan Levy
**Subject:** Attached Image

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TIMOTHY A. BROWN           *
                           *
        v.                 *      Civil No. HAR-88-1994
                           *
ROBERT J. LOWEN, et al.    *
                        *****

MEMORANDUM

The purpose of this memorandum is to restate briefly the reasons recited by this Court on the record on July 25, 1988 for the issuance of a preliminary injunction.

Plaintiff is running for president of the International Organization of Masters, Mates and Pilots ("IOMMP"). The preliminary injunction which he has sought and which this Court has issued requires defendants to mail his campaign literature to the union membership at his own expense. The critical issue presented in this case is the validity of an IOMMP rule which permits the distribution of campaign literature only after IOMMP's convention has been held and approximately ninety days before the election ballots which are distributed after the convention to the membership must be returned.

A threshold question is presented as to the standard by which this Court is to review IOMMP's rule. Defendants contend that the inquiry which this Court must make is whether the rule is "reasonable." This Court does not agree. 29 U.S.C. Section 481(c) clearly provides that unions and their officers "shall be under a duty, enforceable at the suit of any bona fide candidate . . . to comply with all reasonable requests of any candidate to

# EXHIBIT K

distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization." This mandate could not be more clear. Thus, although a union certainly may - indeed should - adopt a rule known to all candidates in advance setting forth the terms and conditions under which campaign literature will be distributed by the union, in evaluating the validity of the rule a court must inquire not simply whether the rule may be said to be "reasonable" but whether its application results in the rejection of a reasonable request made by a candidate. The IOMMP rule here in question unquestionably has that effect since the request being made by plaintiff - to distribute his campaign literature approximately one month before the union's convention is held - is clearly reasonable.

Even if the standard of review is the "reasonableness" of the IOMMP's rule, this Court finds that the rule is unreasonable.

First, a rule which prohibits pre-convention distribution of campaign literature is per se unreasonable. Although under IOMMP's constitution a candidate may self-nominate himself at the convention, the dynamics of the political process are such that in order to promote an effective candidacy, a non-incumbent candidate must have the opportunity to have the convention delegates consider the merits of his candidacy before they assemble. These delegates are leaders of their local unions, and it is obviously important to a candidate to attempt to elicit

2

their support in order to have them work for them during the post-convention election process. It is virtually impossible for a non-incumbent candidate to engender such support at the convention itself without having had an opportunity to introduce himself and his ideas by mailings made prior to the convention. A lawyer might as well walk into trial unprepared.

Second, although a ninety day period between the time that campaign literature is sent out and the time that ballots must be returned may seem reasonable on its face, it is undisputed that the nature of the work of the members of the union takes them away from home for substantial periods of time. This is the very reason for the relatively long ninety day period for the return of ballots. Under these circumstances while it may be that the campaign literature will have been distributed to the union members by the time that they exercise their vote, it is unrealistic to believe that union members will have conferred with one another concerning the merits of the respective candidacies before casting their ballots within the ninety day period. This underscores the need for an earlier mailing.

It is for these reasons that this Court entered a preliminary injunction in favor of plaintiff. This injunction is stayed pending defendants' seeking to obtain a decision from a

Judge of the Fourth Circuit either reversing the granting of the injunction or continuing the stay pending review of the injunction by a full panel of the Court.

Date: July 20, 1988

J. Frederick Motz
United States District Judge

FILED IN CLERK'S OFFIC
U.S.D.C. - Atlanta
MAR 8
LUTHER D. THOMAS, Cler
By:
Deputy Cler

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

LEO DOUGLAS MIMS,

        Plaintiff,

v.s.

TEAMSTERS LOCAL UNION No. 728,

        Defendant.

Civil Action No.
C86-454A

## ORDER

Plaintiff has moved, pursuant to Rule 65, F. R. Civ. P., for injunctive relief to compel defendant Teamsters Local 728 to comply with his reasonable request to distribute a campaign mailing as required by 29 U.S.C. § 481(c). Having heard argument from both parties, the Court is satisfied that plaintiff has shown a reasonable likelihood of prevailing on the merits of his claim, that he and the Local 728 membership would suffer irreparable harm if injunctive relief were withheld, that any potential harm to defendant is speculative and unlikely, and that the public interest would be served by issuance of an injunction. Accordingly, it is hereby

ORDERED that Local 728 shall comply with plaintiffs' request that it generate a set of ~~gummed~~ mailing labels in 4 UP order for the membership, sequentially organized by ZIP code, and that it deliver those labels to National Mailing Service, 3415 Empire Blvd, Atlanta ~~a commercial mailing house in the Atlanta area specified by plaintiff,~~ provided that mailing house will guarantee defendant the security of the mailing list, no later than ___ a.m.

Brown v. Lowen

9:00

on Tuesday, March 4, 1986. No bond will be required.

Issued at 3:30 p.m. on March 3, 1986

*Robert L. Vining*
UNITED STATES DISTRICT JUDGE

Plaintiffs will pay $28.00 for labels, $63.00 for Titan operation, and $15.00 per hour for security of the mailing list from delivery to mailing house to postal office delivery, totaling an estimated $211.00, payable ~~up production~~ upon delivery of the labels to the mailing house.

# MailChimp Email Marketing and Email List Manager

FeaturesPricingSupportBlogMoreSign Up FreeLog InSearchOpen Navigation

Search | Clear

Loading

## MailChimp Grows With You

### Calculate your monthly costs

Enter your estimated monthly number of subscribers 21000

Learn about high-volume pricing or contact us for a quote

Subscribers
Emails per month
Monthly cost

- 5,001 - 10,000

    Unlimited

    ### $75

- 10,001 - 25,000

    Unlimited

    ### $150

- 25,001 - 50,000

    Unlimited

    ### $240

Currency USD ($)

### Forever Free

EXHIBIT L

If you have fewer than 2,000 subscribers, you can send up to 12,000 emails per month absolutely free. There's no expiring trial, contract, or credit card required. There are a few catches, though.

Details

## Monthly plans

If you send at least one newsletter a month, a monthly subscription is your best option. We'll bill your credit card every month, based on the total number of subscribers in your account, and automatically adjust your monthly fee as your list grows or shrinks.

- Full feature set
- Unlimited sending*
- For frequent senders

*for lists with up to 50,000 subscribers

| **Price** /month | $10 | $15 | $30 | $50 | $75 | $150 | $240 |
|---|---|---|---|---|---|---|---|
| **Subscribers** | 0-500 | 501-1,000 | 1,001-2,500 | 2,501-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 |
| **Send limit** | Unlimited | Unlimited | Unlimited | Unlimited | Unlimited | Unlimited | Unlimited |

View international pricing

## Pay as you go

If you're not a frequent sender, you can purchase credits that work like stamps for email. Buy them when you need them, and don't worry about squeezing value out of a monthly plan that doesn't fit your needs.

- No monthly obligation
- Purchase as needed
- For infrequent senders

| **Prepay amount** | $9 | $30 | $60 | $100 | $150 | $200 | $250 |
|---|---|---|---|---|---|---|---|
| **Price per email** | $.03 | $.03 | $.03 | $.02 | $.02 | $.02 | $.01 |
| **Credits** | 300 | 1,000 | 2,000 | 5,000 | 7,500 | 10,000 | 25,000 |

## High volume monthly plans

MailChimp is built to handle lists of any size. If you have more than 50,000 subscribers, get in touch with us for a quote.

- Do it yourself
- Intelligent delivery
- Multi-User Accounts

| Price/month | $380 | $2,553 | $4,623 | $8,763 | $12,930 |
|---|---|---|---|---|---|
| List size examples | 50,001-75,000 | 500,001-600,000 | 1,000,000-1,100,000 | 2,000,001-2,100,000 | 3,000,001-3,100,000 |
| Send limit | 900,000 | 7.2 million | 13.2 million | 25.2 million | 37.2 million |

# High volume CPM

If you have a large list and send fewer than four times a month, you may not want to pay for email volume capacity you're not using. Our high volume CPM pricing is for you. No contracts, and the credits don't expire. Contact us if you have any questions.

- Do it yourself
- Intelligent delivery
- Multi-User Accounts

| | | | |
|---|---|---|---|
| Price | $2,500 | $5,000 | $10,000 |
| Price per thousand emails | $1.25 | $1.00 | $0.40 |
| Credits | 2,000,000 | 5,000,000 | 25,000,000 |



## Transactional email pricing

Looking to send one-to-one triggered email? Mandrill is an app for that.

- 12,000 Emails Free
- API & SMTP Setup
- Dedicated IPs Available

| Free | $0.20/thousand | $0.15 /thousand | $0.10/thousand |
| --- | --- | --- | --- |
| Up to 12k emails | next 1m emails | next 5m emails | remaining emails |

MailChimp

©2001-2013 All Rights Reserved. MailChimp® is a registered trademark of The Rocket Science Group.

Close

**About**

- About MailChimp
- Jobs
- Brand Assets
- Legal Policies

**Resources**

- Guides
- Research
- Experts
- MailChimp at Work

**Tools**

- Integrations Directory
- Template Language Docs
- API Docs
- Status

**Contact Us**

- Contact MailChimp
- Feedback
- Abuse Desk
- Press Resources