UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK DIMONDSTEIN, et al. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:13-cv-1228 (CKK) |
| ) | |
| AMERICAN POSTAL WORKERS UNION, ) | |
| Defendant. ) | |

**DEFENDANT'S NOTICE OF ERRATA**

Defendant American Postal Workers Union, AFL-CIO ("APWU") respectfully fully file their corrected Declaration of Elizabeth Powell. While Defendants timely filed their Opposition to Plaintiffs Motion for Preliminary Injunction and their Motion for Summary Judgment with a Declaration of Elizabeth Powell on August 16, the Powell Declaration incorrectly indicates in ¶ 25 that the office of Motor Vehicle Services Assistant Director is part of the 13-member APWU National Executive Board.

Dated August 19, 2013          Respectfully submitted,

O'DONNELL, SCHWARTZ & ANDERSON, P.C.

By: /s/ Darryl J. Anderson
Darryl J. Anderson
DC Bar Number 154567
1300 L Street NW Suite 1200
Washington, DC 20005-4178
Telephone: (202) 898-1707
Facsimile: (202) 682-9276
danderson@odsalaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARK DIMONDSTEIN, et al.<br><br>        Plaintiff,<br><br>v.<br><br>AMERICAN POSTAL WORKERS UNION,<br><br>        Defendant. | Case No. 1:13-cv-1228 (CKK) |

## DECLARATION OF ELIZABETH POWELL

I, Elizabeth Powell, in lieu of an affidavit as permitted by 28 U.S.C. Section 1746, declare as follows:

1. I am the Secretary-Treasurer of the American Postal Workers Union, AFL-CIO (APWU). The APWU is one of the four major unions representing employees of the United States Postal Service. The APWU represents clerks, maintenance employees, motor vehicle service employees, and several other categories of postal employees in nationwide bargaining units. We represent approximately 200,000 postal employees.

2. I was appointed Secretary-Treasurer of the APWU in October 2009 to fill a vacancy. I have since won election to a full three-year term that began on November 12, 2010. National officers of the APWU, including the Secretary-Treasurer, are elected through a nationwide mail ballot election in which all members of the APWU are eligible to vote. I am the first woman to hold the office of Secretary-Treasurer of the APWU, an

office that is one of the three top offices in the union. I was elected in 2010 without opposition.

3. Before my appointment as Secretary-Treasurer, I served for 20 years as the elected Northeast Regional Coordinator of the APWU. In that job, I was responsible for coordinating the work of the APWU in an 8-state region and in Puerto Rico and the Virgin Islands. I was the first woman elected to serve as one of the five APWU Regional Coordinators and, by virtue of my election to that position, I became the first woman to serve on the 13-member National Executive Board of the APWU. Before my election as Northeast Regional Coordinator, I served for 6 years as a National Business Agent of the APWU and for 11 years as President of the Hempstead, NY/Western Nassau, NY Area local of the APWU.

4. As Secretary-Treasurer, I am the custodian of the official financial and business records of the APWU. Because of my work as Northeast Regional Coordinator, my service on the APWU National Executive Board, and my work as Secretary-Treasurer, I am thoroughly familiar with the Constitution and Bylaws of the APWU and thoroughly familiar with how the Union is governed in all aspects of its operations.

5. The APWU has a proud tradition of diversity, democracy and free speech within the Union; and a proud tradition of public service to the American people. The workers we represent are approximately 40 percent racial minorities, 40 percent women, and 27 percent veterans.

6. I am aware that, in the above-captioned suit, plaintiffs Mark Dimondstein, Tony McKinnon and Violetta Ward have alleged that the APWU should be required to create an e-mail list of its members and make that list available to candidates for national union

offices for purposes of sending their campaign literature to APWU members. That contention makes no sense to me because we have no such list and we do not use e-mails to communicate with our members with the exception of a relatively small list of about 21,000 e-mail addresses, belonging to members and non-members that our Legislative Department e-Team, uses to inform people of legislative developments.

7. Because we are a union of postal workers, we have a strong tradition within our union of sending official communications to each other by U.S. Mail. Many of our members and many of our union leaders oppose the use of e-mail for sending union communications to our members.

8. Until a few years ago, the APWU did not seek to collect e-mail addresses from new members who join our union. Membership is ordinarily obtained by filling out a form called an "1187" that also authorizes automatic payroll deduction of dues. That form did not provide a place for collection of e-mail addresses. A few years ago, the APWU changed the form to add a place for e-mail addresses to be provided. This sparked a floor debate and vote at the 2010 Biennial National Convention.

9. Our convention delegates are selected to represent their locals and states and come to our Biennial Conventions from every state and territory in the United States. The Biennial National Convention is the highest ranking governing body of the APWU.

10. On August 26, 2010, a resolution came before the delegates at our 20th Biennial Convention that would have required that a means be provided for the collection of e-mail addresses on the form 1187. As the Convention debate on the resolution reflects, the form already had been revised to include a place for collecting e-mail addresses, but many forms in the field did not provide for e-mail addresses. A representative of the

National Executive Board, Western Regional Coordinator Omar Gonzalez, reported to the delegates that the NEB voted non concurrence on the resolution to <u>require</u> the addition of a place for e-mail addresses because the form had been revised to do so. After debate for and against the resolution, the resolution to require that a place for e-mail addresses be required on the form was defeated by a voice vote of the delegates. A true and correct copy of the proceedings on this issue at the 20th Biennial Convention is Exhibit A to this Declaration.

11. At this time, some of the 1187 forms used to sign up new members include a place for e-mail addresses and some do not. The form available on the internet does provide a place, but most members are signed up in person at new employee orientation. Using whatever form of the 1187 the local chooses to use. Exhibits B through E to this Declaration are 1187 forms, an undated form with no place for an e-mail address and three examples on which there is a place for an e-mail address.

12. I am aware that Mr. Dimondstein's Declaration filed in this case, in paragraph 5, states that the APWU membership application form "demands" e-mail address information. That statement is incorrect. The form, in its new version, provides a place for e-mail information, but the provision of that information is voluntary and is not a condition on membership. It would be contrary to the will of the membership as expressed at the 2010 Biennial Convention to require prospective members to provide e-mail addresses. Some APWU locals continue to use the older form that does not make provision for e-mail addresses.

13. The three plaintiffs in this case all were present at the 2010 Biennial Convention. Ms. Ward and Mr. KcKinnon were delegates, and Mr. Dimondstein was present and campaigning for election to the position of Organization Director.

14. The APWU 21st Biennial Convention in August 2012 again considered the use of electronic communication in APWU national officer elections. The Convention amended Article 11, Section 3.(c) by adding a provision for 1,000-word statements from candidates to be posted on the APWU web page  See Exhibit F at page 32 of the Constitution and Bylaws, last page of Exhibit F. Once again, two of the plaintiffs were present at the Convention, Ward and McKinnon as delegates.

15. Articles 11 and 12 of the APWU Constitution and Bylaws establish the basic procedures and timetables for the nomination and referendum election of National Officers. Copies of Articles 11 and 12 are Exhibits F and G to this Declaration respectively.

16. Under Articles 11 and 12 of the Constitution and Bylaws, our triennial National Officer election campaigns are five months long, from the time election rules are announced until the ballots are mailed to the members and then returned to be counted by an independent ballot association. A list of "Important Election Dates" that is provided to any member who asks for a nominating petition is Exhibit H to this Declaration.

17. I am aware that the Complaint in this case, which was verified by Mr. Dimondstein, states (in paragraph 7):

> Although plaintiffs are campaigning at the entrances to workplaces spread throughout the United States and plan to send a postal mailing to all members of the union, those methods of campaigning are expensive.

This statement is grossly misleading about the campaign means and resources available to Mr. Dimondstein and his team. In addition to "campaigning at the entrances to workplaces" and sending "postal mail" Mr. Dimondstein and his team are campaigning by:

- Having a 300-word statement by each candidate printed in the American Postal Worker Magazine which has been mailed to every member of the APWU at union expense and also made available to members in the members only section of the APWU web page.

- Having an additional 1,000-word statement by each candidate presently posted on the members-only section of the APWU web page at no cost to the candidates.

- Having the support of a dissident web page about APWU matters called the "21st Century Postal Worker," a web page that has been visited nearly two million times.

- Having their own team and individual campaign web pages linked to the 21st Century Postal Worker web page.

- Maintaining their own campaign Facebook pages.

- Maintaining e-mail accounts.

- Maintaining twitter accounts.

18.     I have attached as Exhibit I to this Declaration a copy of the 21st Century Postal Worker web page. That web page shows that it has been accessed more than 1.9 million times. It shows a link to the "APWU 2013 National Election." When one follows that link, the first web page listed on the next page is a link to the Plaintiffs' team campaign web page.

19.     I have attached as Exhibits K, L and M to this Declaration, respectively copies of the individual campaign web pages of plaintiffs Dimondstein, Ward and KcKinnon.

20.     Under Article 11 of the APWU Constitution and Bylaws, Section 3(c), the National Union publishes candidate statements for all candidates for national office at no cost

to the candidates. Every candidate may provide a 300-word statement for publication in the July-August edition of the American Postal Worker magazine, which is the official publication of the APWU. By this means, the National Union mails the candidates' 300-word statements to every member of the Union during the campaign period and also posts them on-line in the members-only section of the APWU web page.

21. The 300-word statements of each of the plaintiffs in this case have been published in the July-August issue of the American Postal Worker. Copies of those statements are Exhibits N (Dimondstein), O (McKinnon), and P (Ward) to this Declaration.

22. Mr. Dimondstein's 300-word statement (Exhibit N) that has been distributed by mail to every APWU member at no cost to Mr. Dimondstein, and which also is posted on the APWU web page at no cost to Mr. Dimondstein, includes the following passage:

> For more information please visit our website: www.apwumebersfirst.org or contact me directly at votemarkd@yahoo.com

This reference to Mr. Dimondstein's campaign web page and yahoo account also is included in Mr. Dimondstein's 1,000-word candidate statement that is posted in the members only section of the APWU web page. Although Mr. KcKinnon and Ms. Ward submitted 300-word statements and 1,000 word statements for publication by the National Union, and both of them maintain individual campaign web pages linked to the 21st Century Postal Worker web page, neither Mr. McKinnon nor Ms. Ward included a reference to their campaign web page in their union-published statements.

23. The 1,000-word candidate statements of the three plaintiffs that are posted on the APWU web page are Exhibits M (Dimondstein), N (McKinnon), and O (Ward) to this Declaration.

24.     I am aware that the Memorandum of Law filed on behalf of plaintiffs in this case asserts that "only several communications can give insurgent candidates a chance to overcome the considerable advantage of incumbency." Plaintiffs' Memorandum at 6. This statement, which is not included in the Verified Complaint or in Mr. Dimondstein's Declaration, is unsupported by facts in the record and is untrue.

25.     The political history of the APWU is full of examples of how effectively our democratic processes work. Examples that come readily to mind include the following instances involving full-time elected offices at APWU headquarters in Washington, DC. Officers in bold-faced type were offices that are part of the 13-member APWU National Executive Board, which is the highest ranking governing body of the Union between Biennial Conventions:

- In our 1980 election,
    - Moe Biller defeated an incumbent **President**, Emmett Andrews.
    - John Richards defeated an incumbent **Director of Industrial Relations**, Forest Newman.
    - Bill Burrus (later to be elected President) won the office of **Executive Vice President** running as an outsider on a team with Biller and Richards.
    - Sam Anderson defeated incumbent Mike Benner for the office of **Special Delivery Messenger Craft Director.**
- In our 1983 election,
    - George McKeithen defeated incumbent Sam Anderson for **Special Delivery Messenger Craft Director.**
- In our 1992 Election,
    - Jim Lingberg defeated an incumbent, Tom Freeman, for the position of **Maintenance Craft Director.**
- In our 1998 election,

- o Bob Pritchard defeated an incumbent **Motor Vehicle Services Director**, Don Ross.

- o Joe Williams defeated an incumbent Motor Vehicle Services Assistant Director, Teddie Days.

- In our 2001 election,

    - o Bill Burrus, the long-time Executive Vice President and heir apparent to Moe Biller was elected **President**; however

    - o Cliff Guffey, running as an insurgent candidate, defeated Bill Burrus's chosen running mate for the office of **Executive Vice President**, Steve Albanese.

    - o Steve Raymer defeated an incumbent **Maintenance Craft Director**, Jim Lingberg. Lingberg was on the Burrus team.

    - o Sue Carney defeated an incumbent **Director of Human Relations**, Sidney Brooks. Brooks was on the Burrus team.

26. These examples, and there probably are others, belie the contention that dissident or insurgent candidates need the Court to require the Postal Workers Union to create an e-mail list it does not have and does not want to assist the plaintiffs with their campaign. Candidates have been able, and are able, to communicate their message to APWU members.

27. Mr. Dimondstein alleges repeatedly that his request to be permitted to have access to e-mail addresses in the Union's data base were unanswered. Complaint pars. 10, 11, 14; Plaintiff's Memorandum of Law at 2. Those statements are incorrect. Exhibit T to this Declaration is a true and correct copy of the July 15, 2013 Certified letter from the Chairman of the Election Committee to Mr. Dimondstein replying to Mr. Dimondstein's July 2, 2013, letter requesting e-mail addresses of APWU members. Page two of Exhibit T is the unsigned Certified Mail Receipt; and page three of Exhibit T is the official USPS tracking information showing that Mr. Turner's letter to Mr. Dimondstein was delivered on July 17, that a notice was left on that day, and that as of August 5, 2013, the letter was unclaimed. Mr. Dimondstein does not allege that he

made a telephone call to Mr. Turner or anyone else to find out whether his letter would be answered. Instead he made an inquiry "through counsel."

28.    Mr. Dimondstein is a veteran APWU staff member whose identity, ideas and proposals are very well known to APWU members. He was appointed as a full-time union organizer for the APWU in 1995. He spent at least 15 years travelling all over the country as a full-time APWU organizer. He has run for national union office unsuccessfully three previous times, in 1992 (Southern Regional Coordinator), 1998 (Director of Organization), and 2010 (Director of Organization). His 300-word campaign statement has been mailed to every APWU member and posted on the APWU web page, and his 1,000 word statement is posted on the APWU web page. His demand that a special e-mail list be prepared for his use in addition is unreasonable and unwarranted..

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 19, 2013.

_____
Elizabeth Powell