**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MARK DIMONDSTEIN, et al.<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN POSTAL WORKERS UNION,<br>Defendant. | ) | Case No. 1:13-cv-1228 (CKK) |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARYJUDGMENT**

Dated August 21, 2013

O'DONNELL, SCHWARTZ & ANDERSON, P.C.
By: /s/ Darryl J. Anderson
Darryl J. Anderson
DC Bar Number 154567
1300 L Street NW Suite 1200
Washington, DC 20005-4178
Telephone: (202) 898-1707
Facsimile: (202) 682-9276
danderson@odsalaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... *i*

I. THIS CASE MUST BE DECIDED ON THE MERITS AT THIS TIME .......... 1

A. The Court's Decision on Plaintiffs' Motion For A Preliminary Injunction Will Be The Equivalent Of A Decision On The Merits .......... 1

B. There Is No Factual Issue That Could Justify Delay In Reaching Defendant's Motion For Summary Judgment .......... 1

C. The Facts About The APWU Database Are Undisputed .......... 6

II. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW .......... 7

A. Plaintiffs' Demand Is Not A Reasonable Request To Distribute Campaign Literature To All Members Within The Meaning Of 401(c) .......... 7

B. Plaintiffs' Use Of The APWU's Partial E-Mail File Would Burden Members With Unsolicited E-Mails And Would Threaten The Efficacy Of The Legislative Department's E-Alert Program At A Critical Time .......... 10

III. CONCLUSION .......... 11

**TABLE OF AUTHORITIES**

**CASES**

*Brown v. Lowen*, 857 F.2d 216 (4th Cir. 1988), aff'd 498 U.S. 466 ............................................1, 5

*Chao v. HERE Local 54*, 166 F.Supp.2d 109 (D.N.J. 2001) .......................................................10

*Chao v. UFCW Local 951*, 207 WWL 208537, 181 LRRM 2420 (W.D. Mich. Jan. 24, 2007) ...10

**International Organization of Masters Mates & Pilots v. Brown*, 498 U.S. 466 (1991)..............1

*Masters, Mates & Pilots v. Brown*, 498 U.S. 466 (1991) ........................................................9, 10

**STATUTES, REGULATIONS AND AGENCY GUIDANCE**

29 U.S.C. 481(c) ..........................................................................................................................8

# I. THIS CASE MUST BE DECIDED ON THE MERITS AT THIS TIME

## A. The Court's Decision on Plaintiffs' Motion For A Preliminary Injunction Will Be The Equivalent Of A Decision On The Merits

Plaintiffs seek to avoid summary judgment in this case while arguing that they must be provided preliminary injunctive relief that would effectively end the case. As we show below, there is no genuine dispute as to any material fact and Defendant is entitled to judgment as a matter of law.

In the Court of Appeals decision that led to the Supreme Court's decision in *International Organization of Masters Mates & Pilots v. Brown*, 498 U.S. 466 (1991), the Fourth Circuit observed that

> The District Court has ordered IOM PP to provide plaintiff with mailing labels containing the names and addresses of voting members of the union. Though the order of the district judge related to an application for a preliminary injunction, the granting of the motion in effect constituted a decision on the merits. Accordingly, we have reviewed this case on the merits. Doing so, we affirm the decision of the District Court as one on the merits.

*Brown v. Lowen*, 857 F.2d 216 (4th Cir. 1988), aff'd 498 U.S. 466, 472 n. 6. For the same reasons, the Court must address the merits in this case.

## B. There Is No Factual Issue That Could Justify Delay In Reaching Defendant's Motion For Summary Judgment

Plaintiffs have asserted (Opposition at 3) that perhaps Defendant sought leave to file a Motion for Summary Judgment "as a ploy" to obtain a right to file a sur-reply brief in response to Plaintiff's Motion for Summary Judgment. In this assertion, Plaintiffs have sought to place the shoe on the wrong foot. Plaintiffs have made detailed factual allegations and legal arguments in Plaintiffs' Reply Memorandum in Support of Their Motion for Preliminary Injunction, but have filed merely a three-page Opposition to Defendant's Motion

for Summary Judgment in addition to the required response to Defendant's Statement of Material Facts. But for the pendency of Defendant's Motion for Summary Judgment, Defendant might have been denied any opportunity to address Plaintiffs' arguments on the merits made summarily in its Opposition to Defendant's Motion but fulsomely in its Reply Brief on the issue of injunctive relief.

As the transcript of the scheduling conference will show, the Court raised the question whether the Court should address the merits of this case in deciding Plaintiff's motion for preliminary injunctive relief. Counsel for Defendant was responding to that question in suggesting that the orderly way to proceed would be for Defendant to move for summary judgment. The Court then set an appropriate procedural schedule in accordance with the parties' wishes and without objection from either party. As we show below, there is no just cause for delay and summary judgment should be entered in Defendant's favor.

Counsel for Plaintiffs now seeks relief from the Court's Order by filing a Third Declaration from himself. Much of the Declaration is argument based on counsel's reading of Declarations submitted in support of Defendant's Motion for Summary Judgment. That portion of the Third Declaration will be addressed below. One factual statement is, however, pertinent to the procedural posture of the case. Counsel states:

> I contacted Mr. Anderson by e-mail to try to set up a conversation with union staff who knew the facts about the union's database of membership e-mails and how it was and could be used. Mr. Anderson responded that evening, that we could not discuss that matter until Friday afternoon, after the union had filed papers. I contacted Mr. Anderson on Friday afternoon, August 16, to try to set up a conversation with some of his affiants. On Friday night, Mr. Anderson said that I could not talk to his affiants.

Third Affidavit Of Paul Alan Levy. [Emphasis added here.]

Plaintiff's counsel correctly reports in his Third Declaration that counsel for Defendant considered the possibility that it would be necessary for Plaintiffs' counsel, and perhaps Plaintiffs' IT consultant, to talk to Defendant's IT Manager about the capabilities of Defendant's computerized database system. However, that was before counsel for Defendant had an opportunity to talk to Mr. Cronk and to file Mr. Cronk's Declaration. By Friday noon when Defendant filed its Motion for Summary Judgment, it was clear that no technical discussion with Mr. Cronk was necessary. As Defendant had submitted Mr. Cronk's Declaration confirming that it would be possible to create an e-mail list from the e-mail addresses in Defendant's database s there was no need for a discussion. Mr. Cronk's Declaration filed Friday, August 16, at noon states:

> The iMIS system gives us the following capabilities, or lack of capabilities, with regard to e-mail addresses in the iMIS file:
>
> - We can segment the addresses by local, by state organization, by craft and by geographic location.
> - We cannot determine in most cases how an e-mail address was first obtained; but if a member has accessed their personal information and updated it, we could determine that.
> - We cannot sort the e-mail addresses by the date the member joined the APWU.

Cronk Declaration ¶ 18.

In Defendant's view, these facts stated by Mr. Cronk are immaterial to Defendant's Motion for Summary Judgment. Because Defendant does not maintain an e-mail address list for its members and has never attempted to communicate with even a portion of its membership of 193,000 by using the 27,000 e-mails in its database, Plaintiffs have no right to require Defendant to create an e-mail list of those addresses for Plaintiffs' use. See Defendant's Memorandum of

Points and Authorities (Docket entry 9) at 2-5. Second Declaration of Elizabeth Powell ¶ 8; Cronk Declaration ¶ 10. Nevertheless, the Postal Workers Union could prepare an e-mail list for Plaintiffs if the law required them to do so. Thus, Mr. Cronk's Declaration obviates any need for Plaintiff's consultant to talk to Mr. Cronk. Plaintiffs have not said they want anything from Defendant that Defendant has not acknowledged could be provided if ordered by the Court.

Plaintiffs' general assertion that they might be able to learn something even more useful if only they had more time does not meet the requirement of Rule 56(d), Fed.R.Civ.P, that the nonmovant must show by affidavit or declaration that "for specific reasons, it cannot present facts essential to justify its opposition" to APWU's Motion for Summary Judgment. Plaintiffs have neither stated what "essential facts" it needs to obtain nor shown specific reason why it cannot state them.

Plaintiffs' Opposition to APWU's Motion for Summary Judgment asserts, incorrectly and repeatedly, that counsel for Defendant at first indicated a willingness to permit Plaintiffs' counsel to talk to Defendant's affiants and then would not do so. The facts are, instead, as stated in counsel's Third Declaration. Defendant's counsel was willing to facilitate a technical discussion of the capabilities of the APWU's computerized database if necessary but not with other affiants. The discussion agreed to proved to be unnecessary because, when consulted by Defendant's counsel, Mr. Cronk was able to provide a Declaration that spells out what Plaintiffs need to know. The database could be mined for e-mail lists if the Court orders that it be done.

There is no evidence in counsel's Third Declaration or anywhere else to support the more general statements made in Plaintiffs' opposition about Defendant's counsel offering to permit discussions between Plaintiffs' counsel and affiants other than Mr. Cronk.

In effect, Plaintiffs are complaining that the present posture of the case is unfair to them because it is proceeding to a judgment on the merits too rapidly. Once again, this puts the shoe on the wrong foot. A preliminary injunction in this case, as Plaintiffs must know, would effectively be a judgment on the merits.[1] Plaintiffs are in effect seeking a final judgment, but they have neither filed a motion for summary judgment nor complied with the Rule 56(d) requirement that they state specific reasons why they cannot present facts essential to justify their opposition to proceeding to judgment on the merits.

As the attachments to counsel's Third Declaration show, when Plaintiffs' counsel raised the question of talking to Defendant's affiants, counsel for APWU replied:

At 1:03 p.m. on Friday, August 16: "Let me know what you need to know."

At 11:44 p.m. on Friday, August 16: "Paul, we talked about possibly talking to our IT person if there were a technical problem that might be resolved that way. If there is such an issue, let me know."

At 10:23 a.m. on Saturday, August 17: "What are your questions?"

At 1:24 p.m. Saturday, August 17: "Paul, I think you should just go ahead and file your papers on Monday. That process should focus any factual question closely enough so that we can deal with it."

Third Declaration of Paul Alan Levy, Exhibit W.

We understand Plaintiffs to be saying that they simply have not had time to comply with Rule 56, but we disagree. Mr. Dimondstein wrote to the APWU Election Committee on July 2, 2013 seeking access to e-mail addresses. The Election Committee replied by Certified First Class Mail that arrived at Mr. Dimondstein's home address on July 17, 2013. That letter went unclaimed for reasons that Mr. Dimondstein does not specify. Mr. Dimondstein does not state

[1] Plaintiffs' counsel was also counsel for the plaintiffs in *Brown v. Lowen*, 857 F.2d 216 (4th Cir. 1988) (the granting of the motion for preliminary injunction in effect constituted a decision on the merits).

that he was unaware that notice had been delivered to his home that the Union's certified mail response was waiting for him. He states that he "spent most of the month of July on the road, campaigning…" Dimondstein Second Affidavit ¶ 7. But he is married and he does not state that his wife did not see the notice of certified mail and make him aware of it. *Id*.; Second Declaration of Elizabeth Powell ¶10.

Furthermore, Mr. Dimondstein is well-acquainted with Election Committee Chairman Tony Turner. If Mr. Dimondstein had wanted an early response so he could prepare a motion for summary judgment, he could have force the issue by calling Mr. Turner or by calling Secretary-Treasurer Powell to ask her to help him obtain a response. Second Declaration of Elizabeth Powell ¶10. Thus, Mr. Dimondstein could have had an answer at least by July 17, but he did not take the simple step of checking his mail or calling the Election Committee Chairman to get an answer.

Moreover, counsel for Defendant informed counsel for Plaintiffs by e-mail on July 19 that Defendant would not give Plaintiffs access to the Union's database. Affidavit of Paul Alan Levy Exhibit J. The Complaint was then filed on August 9, 2013. The Court held a Telephone Conference on Tuesday, August 13, at 1 p.m. During that conference, the Court issued its instructions on the motion and briefing schedule in accordance with the parties' wishes.

**C. The Facts About The APWU Database Are Undisputed**

The APWU has approximately 193,000 members, of whom approximately 41,000 are retiree members. Cronk Dec. ¶¶ 5, 7 It maintains a database containing information about its members, such as their names, addresses and employee identification numbers using a software system called iMIS. Id. The APWU never has attempted to send e-mail messages to its membership using the 27,000 e-mails in its database. Second Declaration of Roger Cronk ¶5;

Second Declaration of Elizabeth Powell ¶8.

The APWU has created two e-mail lists for limited purposes and with a limited number of e-mail addresses. One is the APWU e-Team, a list of APWU members, family members and supporters who wish to receive weekly legislative updates designed to generate interest and action in support of APWU legislative positions. Reid Dec. ¶¶ 5-8. At one point, the e-Team list was populated by using e-mails in the iMIS database, but since then people are asked to sign up using a paper e-Team form or by going on the members only section of the APWU web page to sign up. In either case, the e-mail addresses collected for the e-Team do not enter the iMIS database. *Id.* The e-Team now has about 21,000 members. Powell Dec. ¶21.

The APWU Retiree Department also maintains a small separate E-Mail list of a portion of its membership. The APWU has a retiree membership of approximately 41,000 members. For that group, the Retiree Department has proximally 3,739 e-mail addresses. Powell Dec. ¶ 6. The list was begun with a transfer of more than 5,000 e-mail addresses from the iMIS database. The retiree Department, using a contractor, removed duplicate e-mail addresses. Through that process and because some addressees unsubscribed, the current Retiree Department e-mail list is now only 3,739. Second Beard Dec. That list is the only list created or maintained by the APWU Retiree Department. *Id.* It is used only to send out weekly "Friday Alerts" that are provided by the AFL-CIO Alliance for Retired Americans. Beard Dec.

## II. DEFENDANT IS ENTITLED TO SUMMARYJUDGMENT AS A MATTER OF LAW

### A. Plaintiffs' Demand Is Not A Reasonable Request To Distribute Campaign Literature To All Members Within The Meaning Of 401(c)

Section 401(c) of the LMRDA of 1959, which was enacted before there was an internet or any e-mail, requires unions to "…comply with all reasonable requests of any candidate to

distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization..." 29 U.S.C. 481(c). The U.S. Department of Labor, which has the responsibility of interpreting and enforcing the LMRDA, has considered the question of how this statue should be applied to the use of e-mail addresses. The Department's views are stated in a series of questions and answers about compliance with Title IV of the LMRDA. See Attachment A to this Reply.

The Department's advice draws several lines that confirm Defendant's reading of the statute in this case. Most importantly, the Department observes that "[u]nlike maintaining the membership list, a union is not required to create e-mail records that it does not presently have to accommodate a candidate's request." It also explains that "[u]nions are not required to create systems to accommodate a candidate's request for e-mail distribution." See Attachment A.

The Department observes that "[o]ther than by mail, there is no prescribed manner in which unions must distribute campaign literature." In this case, the APWU has mailed an issue of the Union's official magazine containing 300-word statements from every candidate to every member of the Union at no expense to the candidates. APWU also has posted those 300-word statements on the APWU web page. In addition, it has posted 1,000-word statements from every candidate on the APWU web page. Candidates are, of course, able to have access to the APWU's mailing list to send campaign literature through the mail at the candidate's expense.

The Department also observes that "unions are not required to provide candidates access to all methods of distribution that may be available to the union." Setting aside for the moment the fact that the APWU does not have an e-mail list of its members, because the candidates' statements already have been provided to all members of the Union at no cost to the candidates, a contention that it also must make e-mail addresses available would be inconsistent with the

Department's advice that the Union need not provide access to all means of distribution available to the Union.

In light of the fact that the APWU does not maintain an e-mail list for general communication with its members and has only a partial database from which a partial list could be created, the Department's advice about how to apply 401(c) to the e-mail addresses squarely supports Defendants' position in this case.

Far from supporting Plaintiffs' contentions about union election candidates' rights to dictate the terms on which their campaign materials will be distributed, the Supreme Court's decision in *Masters, Mates & Pilots v. Brown*, 498 U.S. 466, 475 (1991) leaves open the question of reasonableness under 401(c). That case tested the abstract question whether a union can dictate the timing of a candidate's admittedly statutorily-required mailing by establishing a reasonable election rule that prescribed when mailings must be made. The Union in that case contended that the reasonableness of the candidate's request to mail before the nominating convention did not matter if the Union's rule requiring mailings to occur after the nominating convention was reasonable. The Court rejected that contention, but reconfirmed the requirement that a candidate's request to mail must meet the statutory standards of 401(c) in order to be a reasonable request. The Court stated (498 U.S. at 475):

> [A]part from the fact that respondent's request violated the Union rule against preconvention mailings, there is no basis for contending that the request was not "reasonable" within the meaning of section Mark 401 (c). No question is raised about respondent's responsibility for the cost of the mailing or about any administrative problem in complying with his request. The sole issue is whether the union rule rendered an otherwise reasonable request unreasonable.

The Court added later, that "[h]aving dispensed with the Union's argument that a request is *per se* unreasonable simply because it conflicts with a union rule, we need only note again that in this case the Union does not advance any other reason for suggesting that respondent's request

was unreasonable. The Union does not contend, for example, that respondent's request caused administrative or financial hardship to the Union or that did it discriminated against any other candidate." 498 U.S. at 478.

Plaintiff's err in their reliance on *Chao v. UFCW Local 951*, 207 WWL 208537, 181 LRRM 2420 (W.D. Mich. Jan. 24, 2007), and *Chao v. HERE Local 54*, 166 F.Supp.2d 109, 122-123 (D.N.J. 2001), for the proposition that "lists of telephone numbers" must be provided to members under Section 401(c). Those cases, which were decided on post-election challenges by the Secretary of Labor, stand for the quite different proposition that incumbent officers may not make calls using the union's records without making the same facility available to other candidates on a non-discriminatory basis. Thus, contrary to Plaintiffs' contention, those cases have nothing to do with "extending the duty to distribute campaign literature to the use of e-mail addresses.

**B. Plaintiffs' Use Of The APWU's Partial E-Mail File Would Burden Members With Unsolicited E-Mails And Would Threaten The Efficacy Of The Legislative Department's E-Alert Program At A Critical Time**

We made this point elsewhere (Defendant's Memorandum at 6-7) and will not reiterate those arguments here. We do need to respond briefly to Plaintiffs' contention (Response to Defendant's Statements of Material Facts 17-19) that the opinion of recently-retired Legislative and Political Director Myke Reid about the likely damaging effects of political e-mails being sent to e-Team members. First, we observe that we are not talking about a minor amount of political e-mail traffic. Every member of the APWU is entitled to choose among more than 15 candidates in this election. Some members will be choosing among 22 candidates. Second Declaration of Elizabeth Powell ¶¶5-7.

We also observe that Mr. Reid is truly an expert on the subject of the mobilization of

APWU members to lobby Congress, the importance of that effort, and the likely effect of a flood of political e-mails at a crucial time in the Union's lobbying effort. If this case were to be tried, we would show that Mr. Reid is an expert qualified to testify as such under Rule 702 F.R.Evid. On the face of his Declaration, he is qualified to offer his opinion under Rule 701.

In any event, there are other sufficient reasons not to permit Plaintiffs to use the e-Team list. It is not a list exclusively of APWU members; even if it were a list only of APWU members, it would only be a small fraction of the membership; and some of the people on the e-Team list asked to be included on it for a specific purpose that did not include the receipt of political e-mails.

## III. CONCLUSION

For the reasons stated above Defendant is entitled to Summary Judgment and an order dismissing the complaint in this case.

Dated August 21, 2013

Respectfully submitted,

O'DONNELL, SCHWARTZ & ANDERSON, P.C.

By:/s/ Darryl J. Anderson______________

Darryl J. Anderson
DC Bar Number 154567
1300 L Street NW Suite 1200
Washington, DC 20005-4178
Telephone: (202) 898-1707
Facsimile: (202) 682-9276
danderson@odsalaw.com

# ATTACHMENT A

**http://www.dol.gov/olms/regs/compliance/Electionsfaqgen.htm#11**

# Office of Labor-Management Standards (OLMS)

## Frequently Asked Questions (FAQs) Concerning Union Officer Elections

**Introduction:**

This list of frequently asked questions (FAQs) relates to union officer elections, which are governed by the provisions of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA). The LMRDA applies to unions in the private sector as well as unions composed of employees of the United States Postal Service. Most unions composed of Federal government employees are governed by provisions of the Civil Service Reform Act of 1978 (CSRA) which incorporates many of the provisions of the LMRDA.

**Frequently Asked Questions (FAQs):**

* * * *

**Q9. Can a union be required to distribute a candidate's campaign literature to members via e-mail, as opposed to using their postal address?**

A9. Other than by mail, there is no prescribed manner in which unions must distribute campaign literature. Likewise, unions are not required to provide candidates access to all methods of distribution that may be available to the union. Generally, if the candidate's request for an alternative method of distributing campaign literature is a reasonable one, the union is required to make the distribution. Accordingly, OLMS advises unions to comply with a candidate's reasonable request to distribute campaign literature to the membership through e-mail if the union uses e-mail to disseminate information to its members.

**Q10.What if the union has concerns about the confidentiality of their members e-mail addresses?**

A10.If a union is concerned about confidentiality, then distribution should take place without revealing members' e-mail addresses. The union is entitled to protect the confidentiality of members' names and e-mail addresses. Widely available, commercial e-mail applications permit distribution where no recipient can see the identity of the other recipients.

**Q11. What if the union's list of members' e-mail addresses is incomplete?**

A11. Unlike maintaining the membership list, a union is not required to create e-mail records that it does not presently have to accommodate a candidate's request. If the e-mail list of members is incomplete, the union should advise the requesting candidate of how many e-mail addresses it has and let the candidate decide if he or she still wants to use it.

**Q12. Must the union create a system to distribute e-mails if one does not exist?**

A12. No. Unions are not required to create systems to accommodate a candidate's request for e-mail distribution.

**Q13. How much can the union charge a candidate to distribute campaign material by regular mail or e-mail?**

A13. Candidates must pay the cost of distribution. Thus, the union is entitled to charge the candidate for staff time required to send campaign messages, for expenses incurred in hiring temporary staff/contractors, or for any other costs associated with the distribution of the campaign material.

**Q14. Is there a limit on how often a candidate can send out campaign material via e-mail versus regular mail?**

A14. A request to distribute campaign material using either e-mail or regular mail is the same: the union must comply with all reasonable requests and the candidate must bear the cost.

* * * *