UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK DIMONDSTEIN, et al. )
)
Plaintiffs, )
)
v. ) Case No. 1:13-cv-1228 (CKK)
)
AMERICAN POSTAL WORKERS UNION, )
)
Defendant. )

**DEFENDANT'S SUPPLEMENTAL BRIEF ON THE
RELEVANCE AND BEARING ON THE MERITS OF THE
SUPPLEMENTAL AFFIDAVIT OF MARK DIMONDSTEIN**

Defendant American Postal Workers Union, AFL-CIO, ("APWU"), as permitted by the Court's Paperless Minute Order on this date, hereby explains why the Court should disregard the Supplemental Affidavit of Mark Dimondstein.

This case concerns a demand by Mr. Dimondstein and his two co-plaintiffs that Defendant APWU create an e-mail list of rank and file union members that plaintiffs could then use in their political campaign. The Union has approximately 193,000 members. Its database includes e-mail addresses for about 27,000 of those members. Plaintiffs also may be seeking access to two e-mail lists maintained by the APWU. One is a list of about 21,000 APWU members, family members, and supporters who are on the APWU e-Team. That list is used for the APWU's lobbying activities. The other list is a list of approximately 3,700 members of the 41,000-member APWU Retiree Department. That list is used to send a weekly "Friday Alert"

1

published by the AFL-CIO Alliance for Retired Americans to the retirees for whom the APWU has e-mail addresses.

Plaintiffs' suit is brought under Section 401(c) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 481(c). Section 401(c) pertains to the obligation of unions to distribute the political literature of candidates for union office at those candidates' expense. It also prohibits discrimination between candidates when a union authorizes the distribution of campaign literature to members. Mr. Dimondstein has not alleged that the APWU has discriminatorily authorized the distribution of campaign literature to members.

As we explain below, what Mr. Dimondstein has alleged in his Supplemental Affidavit is, at most, a garden-variety complaint that someone has used Union resources in a partisan manner – that is, that Mr. Thomas Maier, a veteran union officer and current APWU staff member, used his official APWU e-mail address to forward to APWU officials a Facebook notice concerning the political campaign of Mr. Dimondstein's opponent. Such behavior, if true would likely violate Section 401(g), 29 U.S.C. § 481(g). But that allegation is not germane to this suit concerning the application of the Section 401(c) provision concerning access to a mailing list of members. Furthermore, a suit complaining of a misuse of union resources (with the exception of a suit claiming discriminatory union authorization of the distribution of campaign literature) may be filed only by the Secretary of Labor and only after the complainant has exhausted his internal union remedies and appealed to the Secretary. Section 402 of the LMRDA of 1959, 29 U.S.C. § 482.

Thus, Mr. Dimondstein's Supplemental Affidavit is irrelevant to the issues in this case. It also would tend to be prejudicial to Defendant's position in this case if the Court were led to

infer from the Declaration that the violation alleged by Mr. Dimondstein is ongoing or that Mr. Dimondstein has no remedy for the alleged violation. There is no allegation much less evidence of an ongoing violation and Mr. Dimondstein has a remedy under the APWU Constitution and Bylaws and under Section 402 of the Act.

The Declaration of Thomas Maier accompanying this Brief explains that the e-mail transmission complained of by Mr. Dimondstein in his Supplemental Affidavit was a mistake made by Mr. Maier, one that Mr. Maier himself sought to remedy immediately after he made it. Mr. Maier does not have a Union-provided cell phone. He uses an iPhone that he purchased with his own funds and uses a family plan internet service provided by AT&T that Mr. Maier pays for himself. Mr. Maier uses his iPhone and AT&T service for both personal and business e-mails.

On the evening of August 18, 2013, Mr. Maier was at his home in northwest Washington, DC, when, shortly after 6 p.m., he received a Facebook-generated message on his iPhone inviting Mr. Maier to look at a Facebook page supporting a political team participating in the current APWU election of national officers. The e-mail was addressed to Mr. Maier's work e-mail address.[1] In response to the Facebook invitation, Mr. Maier promptly forwarded it to approximately 80 APWU officers using his iPhone and three separate e-mail lists Mr. Maier uses, one for all APWU National Business Agents, one for APWU resident officers, and one for all APWU National Executive Board members. Declaration of Thomas Maier.

---

[1] It is very easy for anyone to determine the e-mail addresses of APWU national officers and staff. All official APWU officer and staff e-mail addresses follow the convention of using the person's first initial and last name at apwu.org. Thus, Elizabeth Powell's e-mail address is EPowell@apwu.org. The names of all APWU officers at headquarters and all APWU Regional Coordinators are available on the public part of the APWU web page. Third Declaration of Elizabeth Powell ¶ 5.

3

Within minutes after he had forwarded the invitation, Mr. Maier realized that he had made the mistake of sending a political message to official e-mail addresses of APWU officers. He then sought to recall the message. A large number of the 80 or so e-mails were returned to Mr. Maier unopened, but not all were returned. *Id.* One was copied and sent by facsimile to Mr. Dimondstein who has made it the subject of his Supplemental Declaration.

As explained in the Third Declaration of Elizabeth Powell, Mr. Dimondstein has an internal union remedy for this alleged violation. Under Article 12, Sections 9-11, Mr. Dimondstein has a right to appeal to the National Election Appeals Committee (the NEAC) established to hear appeals concerning alleged violations of his rights in the current election of national officers. Third Declaration of Elizabeth Powell, Exhibit A. Mr. Dimondstein has filed an appeal with the NEAC concerning his allegations that this incident amounts to the use of the property and resources of the APWU for campaigning in the election. Third Declaration of Elizabeth Powell, Exhibit B.[2] The NEAC has, in past elections, ordered pre-election remedies in response to appeals filed under Article 12 of the APWU Constitution and Bylaws. *Id.*, ¶ 7.

Thus, the allegations made in Mr. Dimondstein's Supplemental Affidavit raise an issue of the one-time use of union facilities in the election; the facts underlying the incident demonstrate that the incident was, at most, only that; there is no allegation of or evidence of any authorization of the use of union facilities for campaigning; and Mr. Dimondstein has invoked the internal union remedies he must exhaust before he may complain to the Secretary of Labor. In the meantime, Mr. Dimondstein may be able to obtain a pre-election remedy from the NEAC.

---

[2] Mr. Dimondstein addressed his appeal to the National Election Appeals Committee/ Attn: Secretary-Treasurer. Ms. Powell's office has referred the appeal to the NEAC. *Id.*

4

Failing that, he has a right to seek a post-election remedy from the NEAC or a post-election suit by the Secretary under Section 402 of the LMRDA of 1959. 29 U.S.C. § 482.

For these reasons, Defendant respectfully requests that the Court disregard the Supplemental Affidavit of Mark Dimondstein.

Dated August 22, 2013

Respectfully submitted,

O'DONNELL, SCHWARTZ & ANDERSON, P.C.

By: /s/ Darryl J. Anderson
Darryl J. Anderson
DC Bar Number 154567
1300 L Street NW Suite 1200
Washington, DC 20005-4178
Telephone: (202) 898-1707
Facsimile: (202) 682-9276
danderson@odsalaw.com