UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARK DIMONDSTEIN, *et al.*,         )
                                     )
       Plaintiffs,              )
                                     )
v.                                   )    No. 13-1228
                                     )
AMERICAN POSTAL WORKERS UNION,       )
                                     )
       Defendant.               )

## SECOND AFFIDAVIT OF GLENN SIMPSON

1. My name is Glenn Simpson. I am Online Advocacy and Fundraising Manager at Public Citizen. I have worked at Public Citizen since June 2009.

2. I have been writing, coding, and targeting bulk email, and managing related databases, for nonprofit organizations since 2004. I oversee the email outreach of all of Public Citizen's program groups as well as that of our Communications and Development departments, training and coordinating approximately 10 staff who regularly send bulk emails. I read extensively about email and list management best practices.

3. From 2004 to 2007, I worked as Communications Associate at Workplace Fairness, where I managed its web site and its email programs. During 2007 and 2008, I consulted at the AFL-CIO's Working America project, where some of my duties involved database work related to the project's email outreach.

4. At the instruction of Paul Alan Levy, I reviewed the "supplemental election rules" and the email attaching those rules that Mr. Levy appends to his affidavit. I have also reviewed the email from Paul R. Kumar recounting his telephone call with Kelly Press, also attached to Mr. Levy's affidavit.

5. As an expert in sending bulk email communications to encourage members of the public to take actions, including the support of public policy positions or giving donations to support further efforts, I have several concerns about the rule requiring candidates to use one specific subject line, "2013 APWU National Officer Elections." I do not believe that any knowledgeable sender of campaign emails would choose such a uniform subject line if they hoped that their emailing campaign would have any positive effect on their target audience.

6. The selection of a subject line is one of the most important decisions a campaign emailer can make, because it is largely the subject line that determines whether the email recipient will open the email and start to read the content of the email, or simply disregard the email for a variety of reasons. If, for example, a subject line is sufficiently nondescript, many recipients will choose not to open the email in the first place.

7. If the same subject line is used for multiple emails, some recipients who read one of the emails with that subject line may think any subsequent email with that subject line contains the same information, so open rates will very likely diminish with each subsequent email that has the repeated subject line.

8. The subject line also bears on whether providers of email services will allow the email to reach users' inboxes in the first place. Because spam is such a serious problem, email providers offer robust spam detection through the application of proprietary algorithms and lists of suspect sender. Reusing a subject line several times in a relatively short time period could cause email services such as Gmail – whose strong spam protection is one of the reasons its service is so popular – to decide after the first time that subsequent emails are spam and not even deliver one or more of the subsequent emails.

9. Even if the same subject line must be used for multiple emails, the subject line, "2013

APWU National Officer Elections" has three elements that could make spam filters twitchy: starting with numbers; including an acronym (in all capital letters); capitalizing the other words. The use of consecutive numbers, the fact that the acronym might not be recognized as a common word by the spam filter, and the length of the subject line also raise flags.

10. I have also reviewed the cost requirements associated with the sending of campaign emails. The combination of the set-up charge plus $.02 per email address per email is far in excess of what a user would have to pay in the open market. I don't know this vendor, and at Public Citizen we don't pay per emailed address; rather, we pay a flat monthly fee based on the total number of email addresses that we keep in the Salsa database (I explained what Salsa is in my previous affdiavit). If I divide the monthly fee we pay our vendor by a typical amount of emailed addresses in a month, it's roughly one-tenth of that (i.e., $0.002 per email address in each email). In my previous analysis of APWU's system for collecting email addresses for its legislative alert, I was able to determine that APWU also uses Salsa.

11. The requirement of contacting a particular individual on the telephone between the hours of 9 AM and 5 PM, is also at variance with the normal system for doing mass email business in the marketplace. One of the advantages of an online database is that users can have emails sent on the schedules that **they** choose; in interacting with the Salsa system, I often work in to the evening and send bulk emails during the evening hours, or at least schedule them to be sent at a time of my choosing by the entry of data and the clicking of a button on nights and weekends. Moreover, in my experience, payment by credit card is a very common way of paying for goods and services ordered online.

12. I understand that the plaintiffs would be able to avoid paying repeat setup fees if they tell Kelly Press, at the outset of their emailing campaign, exactly when and to what categories of email

addresses they want to send emails. I can understand that there is some minimal work to be done each time a campaign email is to be sent, and I don't know how they have things set up on the back end in whatever system(s) they use to send bulk emails. In our system (Salsa), it takes a few clicks and no more than a few minutes to change the targeting of an email to do things like send an email only to people in certain states or only to people who did not receive a previous email.

13. As a general matter, when we are engaged in a public policy, action or donation campaign, we adjust our strategy as we see reactions to our initial emails, as well as other developments in the public sphere. If I were choosing a vendor with an eye to maximizing the effectiveness of our campaign while minimizing expense, such a cost structure would lead me away from such a vendor.

> Pursuant to 28 U.S.C. § 1746, I hereby certify under penalty of perjury that the foregoing is true and correct. Executed on September 5, 2013.
>
> *[signature]*
> Glenn Simpson