UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARK DIMONDSTEIN, | ) | |
| | ) | |
| 2518 Burgundy Drive | ) | |
| Greensboro, North Carolina 27407 | ) | |
| | ) | |
| TONY McKINNON, | ) | |
| | ) | |
| 611 Longwood Place | ) | |
| Fayetteville, North Carolina 28314 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| VIOLETTA WARD | ) | No. 13-1228 |
| | ) | |
| 4220 Colony Road | ) | |
| South Euclid, Ohio 44121 | ) | |
| | ) | |
| DEBBIE SZEREDY, | ) | |
| | ) | |
| 6404 Princess Circle | ) | |
| Wappingers Falls, New York 12590-2949 | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN POSTAL WORKERS UNION, | ) | |
| | ) | |
| 1300 L Street NW | ) | |
| Washington, D.C. 20005 | ) | |
| | ) | |
| Defendant. | ) | |

**FIRST AMENDED COMPLAINT**

1. In this action, members of a national labor union who are running for union office seek to enforce their legal right to communicate with their fellow members about their

candidacies by having the union disseminate their campaign literature, at the members' own expense, using more than 20,000 email addresses that the union has accumulated and that the union itself uses to communicate with the membership. Because the election ballots will be mailed to the membership as early as September 10, 2013, plaintiffs sought and obtained a preliminary injunction compelling the union to send their literature to union members by email. In addition, plaintiffs seek to enforce their legal right to place the initials of the union in which they are running for elective office on their campaign literature and campaign paraphernalia, to identify themselves as members of that union, to state their campaign platform succinctly, and to let workers know, at a glance, that the campaign literature pertains to their union and not to one of the other unions whose members work in the same facilities. Despite the fact that incumbent candidates in the same union have displayed the union's initials on their own campaign materials, and even attempted to force all candidates to use the initials "APWU" in the subject line of every campaign email during the 2013 election, the union has declared that because the union has a federally registered trademark for its initials, both trademark law and internal union rules forbid members to use those initials truthfully in speaking to other members. Plaintiffs contend that neither trademark law, the First Amendment, nor the free speech provisions of the Labor-Management Report and Disclosure Act allow the union to restrict the truthful use of the union's acronym.

2. The Court has jurisdiction of this case under 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 481(c).

**PARTIES**

3. Plaintiffs Mark Dimondstein, Tony McKinnon, Debbie Szeredy and Violetta Ward are members of defendant American Postal Workers Union ("APWU") within the meaning of 29 U.S.C. § 402(o).

4. Defendant APWU is a labor organization within the meaning of 29 U.S.C. § 402(i).

**FACTS**

5. The APWU is holding its triennial election of officers. Plaintiffs are running for positions as "officers" of the APWU within the meaning of 29 U.S.C. § 402(n). Ballots in that election will be mailed on September 12, 2013.

6. Plaintiffs are running (with several other candidates) as a slate in opposition to the incumbent leadership. Encapsulating their main platform, which is to put the interests of the members of the union first, they named the slate "APWU Members First."

**Facts Pertaining to Campaigning by Email**

7. Although plaintiffs are campaigning at the entrances to workplaces spread throughout the United States and plan to send a postal mailing to all members of the union, those methods of campaigning are expensive. For example, the cost of printing a single sheet of paper on both sides, stuffing it into an envelope, and mailing it to the entire membership is well in excess of $100,000.

8. The APWU elicits email addresses from its members on its membership application form, as well as in a variety of other ways, and by asking members to provide their email addresses, the union can communicate with them more easily. For example, the

APWU sends a periodic "legislative update" by email to more than 20,000 members. This update, like the union's bi-monthly magazine that is sent by postal mail to members, prominently features the activities of the union's incumbent officers, against whom plaintiffs are running in the election. The union sends a periodic email newsletter to nearly 4000 retiree members. By the time of the 2013 election, the union had accumulated a database of email addresses for nearly 27,000 members; on information and belief, its officers and staff have accumulated additional member email addresses as well. The APWU election committee has used the database to send an email about the election to the entire list of email addresses.

9. Plaintiffs want to be able to send their campaign literature to the union membership by email as well, because email is an effective but much less expensive means of communicating about their candidacies.

10. Accordingly, on July 3, 2013, plaintiff Dimondstein sent the APWU a request to use the union's list of member email addresses to send his own campaign literature, and literature for the rest of the APWU Members First slate to the APWU's email list. He also asked for information about how the email addresses can be broken into separate categories of membership, because he wanted to be able to send separate campaign communications to members in specific geographic, job or other categories, if possible.

11. The APWU never responded to this request, although Dimondstein reminded the union, through counsel, that his request was pending.

12. On July 19, 2013, Dimondstein appealed to the APWU's Election Appeals Committee, treating the union's refusal to respond as an effective denial of his request.

14. The APWU was unwilling to comply with the request.

15. After APWU was ordered by the Court to allow campaigning by email, its election committee imposed a rule requiring all campaign emails to use the following, and only the following, as the subject line: "2013 APWU National Officer Election."

16. Not only would that subject line requirement have put the union in the legally impermissible position of regulating the content of campaign literature, but requiring a uniform subject line would significantly impede the effectiveness of emailed campaign literature, and would serve no legitimate union purpose. The specific subject line required by the union was particularly unsuitable for effective emailing.

17. In addition, the union assigned the task of sending emails to a third-party contractor, Kelly Press, which applied commercially unreasonable payment conditions, charged commercially unreasonable prices for sending emails, and maintained commercially unreasonable hours because it was open only Monday to Friday, 9 AM to 5 PM, and so could not send emails over weekend. Moreover, communications about emailing could only be made to a single staff member who was not in the office even on every weekday.

18. Plaintiffs' slate asked to be allowed to use subject lines of their own choosing, and to be permitted to send campaign emails through vendors with commercially reasonable prices, policies and procedures, but those requests were also denied.

19. On September 5, 2013, the court issued an interim order enjoining the union from sending out any email inviting members to unsubscribe from campaign emails "prior to the sending of any campaign materials," saying that defendant was entitled to have an

unsubscribe option included in any candidate's emails in conformity with past union practice. On September 9, 2013, shortly after the first candidate email, with an unsubscribe option, was transmitted to the union's full list of member e-mail addresses, the union sent an email to the entire database of member email addresses, informing recipients of the option of unsubscribing from future receipt of candidate emails.

**Facts Pertaining to the Use of the Union's Initials in Campaign Literature**

20. Plaintiffs have been campaigning at the entrances to workplaces throughout the United States. Employees at post offices belong to several different unions, including the National Association of Letter Carriers, National Rural Letter Carriers Association, the National Postal Mail Handlers, the National Alliance of Postal Supervisors, and the National Association of Postal Supervisors; twenty percent of postal employees belong to no union at all. Plaintiffs need to display the APWU initials prominently on their campaign materials so that APWU members to whom they hand their literature can see at a glance that the materials pertain to them, while employees who do not belong to the APWU can see at a glance that they may **not** want to take the material because it does not pertain to them.

21. On May 6, 2013, plaintiffs registered a domain name for a campaign web site that accurately depicted their slate name and their campaign platform: apwumembersfirst.com. They posted a web site using that domain name.

22. The APWU has a stylized logo that uses its initials in a distinctive font, as follows:



Plaintiffs have never used this logo in any of their campaign materials.

23. When plaintiffs first declared their plan to run for office by making a formal request for copies of the official nominating petition for the 2013 election, APWU provided them with copies of the election rules and a variety of other documents, including a document entitled "APWU Guidelines Governing the Creation of a Homepage or Website **by APWU National, State, and Local Affiliates**." (emphasis added). A copy of this document is attached as Exhibit 1. The Guidelines document indicated that its strictures were "established for all APWU entities who intend to create a homepage or website on the Internet," and warned against placing election campaign material on official union web sites. Nothing in the document purported to restrict what candidates could place on their own web sites.

24. By letter dated June 18, 2013, several weeks after plaintiffs had chosen their slate name, disseminated literature bearing that name, and created a web site, Darryl Anderson, in his capacity as General Counsel of the APWU, demanded that plaintiffs, and each of the other members of the APWU Members First Slate, cease and desist from using the letters "APWU," or the union's logo, or the name "American Postal Workers Union" in their campaign, on the ground that "APWU is the trademarked logo of the American Postal Workers Union." A copy of this letter is attached as Exhibit 2. Mr. Anderson warned that

use of the initials or the name violates "the property rights of the APWU, violates federal law regulating union elections, and violates Rule VII.7 of the Rules and Regulations Governing the 2013 APWU National Elections." That rule provides, in relevant part, "No Union logo or stationery my be used in campaigning for or against a candidate."

25. When this legal demand was challenged, Mr. Anderson responded, in part, by sending a copy of the federal trademark registration of the letters "APWU" to show the union's "property right."

26. In response to the June 18 demand letter, plaintiffs' counsel explained that the truthful use of the letters to identify the plaintiffs' own union membership status, as well as to specify which membership's interests they wanted to advance, was fair use and not confusing about source, and further that well-settled precedent in other circuits allows the use of a trademark in the domain name of a non-confusing web site that is about the trademark holder. Counsel further pointed out that Dimondstein and his slate do not use the APWU logo, but only use the initials. Mr. Anderson responded by insisting that the use of the initials themselves is what the union forbids. A copy of Dimondstein's explanation of his legal rights is attached as Exhibit 3.

27. Following this exchange, the head of the APWU Election Committee, Anthony Turner, sent a letter dated July 15, 2013, to each of the plaintiffs, as well as to other candidates on the APWU Members First slate, asserting that use of the APWU logo in campaigning violates the APWU's election rules, and demanding that any further such use be discontinued. A copy of this demand letter is attached as Exhibit 4.

28. On August 19, 2013, the head of the APWU National Election Appeals Committee ("NEAC"), Michael Foster, wrote to plaintiff Dimondstein about an "appeal" from an unidentified person which he said had been received on August 2, 2013; Dimondstein had never been notified of this appeal. Foster stated that, ruling on this appeal, the NEAC had decided that the "Members First Team" was in violation of Election Rule VII.7, also citing the "APWU Guidelines Governing the Creation of a Homepage . . ." (that is, omitting the part of the title revealing that it governed home pages of APWU entities, not home pages of members or candidates), which he quoted as follows:

> trademark law protects the APWU name and logo that represent our Union. The APWU policy on the use of APWU resources governs the appropriate use of the APWU name and logo.

The letter also cited the July 15 Turner letter and the June 18 Anderson letter as authoritatively limiting candidates' use of the initials APWU, and warned that if any member of the "Members First Team" won election, the union would immediately begin the process to rescind the results and rerun that election. A copy of the Foster ruling is attached as Exhibit 5.

29. In past elections, incumbent APWU officials, including the present incumbents, have used the initials APWU in their campaign literature without the use being treated as a violation of any union rules. In the 2013 campaign itself, the APWU adopted a rule **requiring** candidates to use the initials APWU in the subject line of any emailed campaign literature.

**CLAIM FOR RELIEF**

**Claims about Emailing Campaign Literature**

30. Section 401(c) of the Labor Management Reporting and Disclosure Act of 1959, ("LMRDA"), 29 U.S.C. § 481(c), requires unions to comply with all reasonable requests from members to distribute their campaign literature to all members by mail or otherwise.

31. The United States Department of Labor, which enforces the officer election provisions of the LMRDA, advises unions that to the extent that they have email addresses for union members, they must comply with reasonable requests to distribute campaign literature by email. *See* http://www.dol.gov/olms/regs/compliance/Electionsfaqgen.htm#11. Labor Department guidelines also forbid unions from regulating the contents of candidates' campaign literature.

32. Dimondstein's request that his campaign literature, and literature from his slate, be distributed by email was a reasonable request. By refusing to grant the request, by imposing the requirement of including the uniform subject line "2013 APWU National Officer Election," and by subjecting plaintiffs to emailing only through a third-party vendor whose charges were unreasonably higher than those commonly assessed by other vendors of emailing services, and whose policies and hours of operation were much more limiting than other vendors available in the market, the APWU violated sections 101(a)(2) and 401(c) of the LMRDA.

33. The violation of the LMRDA caused irreparable injury to plaintiffs by preventing them from timely communicating, inexpensively and effectively, with a significant segment of the union electorate.

34. The union's failure to comply with its duty to grant plaintiffs' reasonable request to distribute their campaign email by using a vendor whose prices were unreasonably high caused plaintiffs to incur excessive expenses in their campaign that ought in equity be refunded to them.

**Claims about the Use of the Union's Initials**

35. Plaintiffs' use of the initials and name of the APWU in their campaign literature and on their web site does not create any likelihood of confusion about the source or affiliation of their literature and web site. No reasonable viewer is likely to believe that the literature or web site is affiliated with or sponsored by the APWU.

36. Plaintiffs have made fair use of the initials "APWU," to identify truthfully the union to which they belong, to whose members they are directing their campaign messages and whose members they want to place first in their actions as officers in the event they are elected.

37. Plaintiffs have not made any use of the mark in connection with the advertising or sale of goods and services, but are using it only in connection with non-commercial speech fully protected by the First Amendment and by section 101(a)(2) of the LMRDA.

38. The First Amendment and section 101(a)(2) protect plaintiffs' right to use the initials APWU and the name American Postal Workers Union to identify truthfully the union in which they are campaigning and the members that they hope to serve as elected officials.

39. There is a present and actual controversy between plaintiffs and defendant over their right to use the initials APWU and the name American Postal Workers Union.

Plaintiffs contend that they have used the initials and the name lawfully. Defendant contends that plaintiffs' use infringes its trademark rights and violates its rules.

40. Defendant's actions have given rise to an actual and justiciable controversy pursuant to 28 U.S.C. § 2201 et seq.

41. Plaintiffs therefore seek a declaratory judgment that they have not infringed any trademark nor falsely designated any origin, that by using the union's initials and name in the way they have done, they have not violated any lawful union rules, and that any claims that defendant might have had under the trademark laws or under the union's rules are barred by the First Amendment and by section 101(a)(2) of the LMRDA, and by principles of fair use, including nominative use.

WHEREFORE, Plaintiffs pray the Court to enter a judgment as follows:

A. Enjoining defendant to distribute plaintiffs' campaign literature, at plaintiffs' reasonable expense, to its entire list of email addresses, and such segments of the email list as may reasonably be segregated;

B. Requiring defendant to inform plaintiff of the categories by which its email list(s) may readily be broken down;

C. Declaring that section 401(c) requires the APWU to make available to candidates for the mailing of campaign literature all member email addresses that it or its officers or employees, in their capacity as such, have accumulated, so long as the candidates pay the costs of the mailings;

D. Declaring that plaintiffs' use of the initials "APWU" and the name "American

Postal Workers Union" in their slate name, their domain name, the contents of their web site, and the contents of their other campaign literature, does not violate the union's trademark rights or any lawful union rules and is protected by the First Amendment and section 101(a)(2) of the LMRDA;

E.  Enjoining the union from taking any action against plaintiffs because of their protected use of the initials "APWU" and the name "American Postal Workers Union";

F.  Awarding plaintiffs their reasonable attorney fees and costs; and

G.  Awarding such other relief as may be just and proper.

Respectfully submitted,

  /s/ Paul Alan Levy
Paul Alan Levy (DC Bar No. 946400)
Jehan A. Patterson (DC Bar No. 1012119)

Public Citizen Litigation Group
1600 20th Street NW
Washington, D.C. 20009
(202) 588-1000 (voice)
(202) 588-7795 (facsimile)
plevy@citizen.org
jpatterson@citizen.org

September 11, 2013