

**American Postal Workers Union, AFL-CIO**

1300 L Street, NW, Washington, DC 20005

## APWU GUIDELINES GOVERNING THE CREATION OF A HOMEPAGE OR WEBSITE BY APWU NATIONALS STATE AND LOCAL AFFILIATES

### (ADOPTED BY THE NATIONAL EXECUTIVE BOARD AT ITS FEBRUARY 24, 1998 MEETING)

(The National Executive Board considered the report of the Internet Committee during its February 24, 1998 meeting and adopted the following policy that will apply to the National Union, and its local and state affiliates.)

Creation of an internet homepage or website for the American Postal Workers Union, AFL-CIO (APWU) by the National Union, its state and local affiliates is an official activity of the National, Local or State organization. As an official activity, the National, State or Local affiliate bears full responsibility for the homepage or website it maintains, even if the site is maintained by an individual member, officer or employee.

These guidelines are established for all APWU entities who intend to create a homepage or website on the internet. Placing material on the internet will involve the Union in the requirements of union election law, copyright law, trademark law, libel law, privacy protection, and in restrictions on political advocacy. In order to conform to the highest standards associated with the APWU name, the following rules are mandatory.

### UNION ELECTION LAW

Union election law prohibits the use of union homepages or websites for campaigning for union elections. The homepage or website is the property of the Union and union property may not be used to campaign for union office. Any homepage or website that violates this prohibition, or that is linked to a union campaign homepage or website, will be de-linked from the APWU National Union homepage or website.

However, Federal law does allow:

* Providing space for all candidates for a particular union office to make a statement on the website. All candidates must be treated equally. If this is to be done, all candidates must be notified that the website is available for this purpose, and space provided must be equal for all candidates.

Exhibit 1

* Posting news stories on the election of union officers that are strictly news reporting and do not express support for or opposition to any candidate.

## COPYRIGHT LAW

Copyright law applies to most expressions of ideas that are put in fixed form. This includes storing information in computer memory for broadcast on the Internet. Therefore, the copyright laws will apply to a homepage or website that you sponsor.

When you post APWU-created material on a site, copyright protection will arise automatically. Such protection makes it unlawful for other people to copy or use your material without permission, except for normally-recognized purposes such as news reporting, research, comment, criticism, etc. By the same token, you may not post or use material created by others, without their permission, except for the same reasons.

* In order to alert visitors to the fact that they are dealing with copyrighted material, you should place the following notice on the bottom of the first page of your homepage or website:

© [year] [abbreviation of Local/State]. All Rights Reserved.

## TRADEMARK LAW

Trademark law protects the APWU name and logo that represent our Union. The APWU policy on the use of APWU resources governs the appropriate use of the APWU name and logo.

## LIBEL LAW

Libel law concerns the ability of persons to sue you for making false statements about them or for portraying them in a way that damages their reputation. Libel is the written equivalent of slander, which is oral. Thus, libel law applies to material put on the Internet. There are no hard and fast rules for determining when material is libelous or not, but you should always be prudent in what you print, and be particularly careful in making statements about persons who are not in the public eye.

* If you print material that may be critical of other persons (including companies) or embarrassing to them, always act in good faith, and try to ensure that what you print is true and fair. Do not respond to unfairness with unfairness.

– 3 –

* Avoid personal attacks.

* Remember that any material that you reprint from another source is, for purposes of libel law, a new publication by you. Therefore, do not reprint material that would not pass these guidelines if created by you in the first place.

* Bear in mind that truth may not be a complete defense. You should have a justifiable Union reason to publish defamatory material, even if it is true.

* Do not include on your homepage or website a bulletin board or other mechanism for visitors to leave comments or statements that other visitors can read. The courts have not yet addressed the issue of whether or not the sponsor of a site that has such a feature can be held responsible for libelous statements that visitors leave there. If the courts begin to address this issue and find that the site sponsor is not responsible, this portion of the guidelines may be changed.

## INVASION OF PRIVACY

You should not publish on your homepage or website private or embarrassing information about people without reason. Most states recognize a right of privacy which permits a person to sue if someone publicly discloses private facts about that person that a reasonable person would consider being offensive and objectionable. If the information to be published is important and pertinent to a labor dispute, it may not be "private" in the sense that will create a right to sue. On the other hand, if you publish private facts of a damaging nature for no-good reason, there may be a right to sue for an invasion of privacy.

## RESTRICTIONS ON POLITICAL ACTIVITY

A local or state union may use the website to explain legislative issues or initiatives, report positions of elected representatives on those issues, and encourage members to contact their elected representatives or otherwise take action to support worker-friendly issues. However, federal and many state and local laws prohibit the use of union treasury money to direct partisan political statements to nonmembers. Because a website is open to the public, the Federal Election Committee has ruled that partisan statements are prohibited.

* You can inform website users what positions elected representatives take on issues important to working Americans, and you can even encourage users to contact their representatives to express their own opinions on

- 4 -

such issues. However, you cannot express an opinion on an issue or legislation in such a way that a "reasonable person" would interpret this as urging the election or defeat of a particular candidate. It is important that you not coordinate any such postings with candidates or political parties, and that you not "expressly advocate" the election or defeat of any particular politician or political party. For example, the website should not say "vote against Congressman X," or otherwise use phrases or words indicating express advocacy.

* Do not use the website to solicit funds for any political candidate or party.

* You can use the website to urge persons to register and vote as long as you do not advocate that they support a particular party or candidate. Such get-out-the-vote communications cannot be coordinated with a candidate or party.

* You should not provide direct links to campaign websites, although links to the official sites of elected representatives or to nonpartisan sources of political news or information are appropriate.

yfc
opeiu #2
afl-cio

## O'Donnell, Schwartz & Anderson, P.C.

COUNSELORS AT LAW

DARRYL J. ANDERSON
LEE W. JACKSON
ANTON G. HAJJAR*
RICHARD S. EDELMAN
PETER J. LEFF
MELINDA K. HOLMES
BRENDA C. ZWACK
SARAH T. KANTER
LISA M. MANSON**
KELLY N. SCOTT**

*ALSO MD
**NOT ADMITTED IN DC

1300 L STREET, N.W., SUITE 1200
WASHINGTON, D.C. 20005-4126

(202) 898-1707
FAX (202) 682-9276
WWW.ODSALAW.COM

JOHN F. O'DONNELL
(1907-1993)
ASHER W. SCHWARTZ
(1911-2006)

MARTIN R. GANZGLASS
OF COUNSEL

June 18, 2013

By Express Mail

Mark Dimondstein
2518 Burgundy Drive
Greensboro, NC 27407

Re: Use of the APWU Logo or the American Postal Workers Union Name to Identify Your Union Election Campaign

Dear Mr. Dimondstein:

We are writing you as General Counsel to the American Postal Workers Union, AFL-CIO (the "APWU") to notify you that your use of "APWU" to identify your union election campaign organization violates the property rights of the APWU, violates federal law regulating union elections, and violates Rule VII.7 of the Rules and Regulations Governing the 2013 APWU National Elections.

APWU is the trademarked logo of the American Postal Workers Union, AFL-CIO. The logo and the name American Postal Workers Union belong to the American Postal Workers Union. The APWU will not permit the use of its logo or name for any commercial purpose, including use to identify individuals or groups in union election campaigns. Use of Union property in a partisan manner in an internal union election is strictly forbidden by federal law regulating Union elections.

It is important that you immediately cease and desist from using the name American Postal Workers Union or the logo APWU as a part of the identity of your campaign or election team.

Please respond by confirming that you will cease and desist from using the Union's name and logo as part of the identity of your organization or campaign.

Very truly yours,

Darryl J. Anderson
Counsel for the APWU

cc: APWU Election Committee

# Exhibit 2

**PUBLIC CITIZEN LITIGATION GROUP**
1600 20TH STREET, N.W.
WASHINGTON, D.C. 20009-1001

(202) 588-1000

July 10, 2013

Darryl Anderson, Esquire
O'Donnell, Schwartz & Anderson
1300 L Street, NW, Suite 1200
Washington, DC 20005-4126

Dear Mr. Anderson:

  I write on behalf of Mark Dimondstein and other members of the APWU Members First slate running in the upcoming APWU election, in response to the cease and desist letter that you have sent, contending that the use of the letters "APWU" in the name of their slate and in the domain name of their campaign web site violates the union's property rights, Title IV of the Labor-Management Reporting and Disclosure Act ("LMRDA"), and a union election rule. Simply put, we reject your claim that opposing candidates cannot use the union's name as part of their campaign, not only because none of the legal authorities that you invoked bars their action, but also because the First Amendment, as well as Title I of the LMRDA, protects the right of intra-union candidates to identify themselves as APWU members, and to appeal to other members of the union using those initials, so long as the use does not suggest that the union itself sponsors their candidacy.

  Although a union's name and acronym are trademarked, and although a trademark is a form of property, that property right does not exclude all other uses as, for example, ownership of a building or vehicle would do. The property right in a trademark excludes only other uses that would cause a likelihood of confusion about whether the trademark owner sponsors the junior use. *Basile, S.p.A. v. Basile*, 899 F.2d 35, 37-38 (D.C. Cir. 1990). *See also Anti-Monopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296, 301 (9th Cir. 1979) ("It is the source-denoting function which trademark laws protect, and nothing more.") Moreover, even if there is some chance of confusion, trademark rights are subject to the defense of fair use. *KP Permanent Make-Up v. Lasting Impression I*, 543 U.S. 111, 121-122 (2004). The right of fair use includes the right to identify the trademark holder as being the subject of discussion, that is, it includes nominative use. *Playboy Enters. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002). A property law regime that fails to recognize these limitations on trademark rights would run afoul of a speaker's free speech rights. *L.L. Bean, Inc. v. Drake Publishers*, 811 F.2d 26, 31-32 (1st Cir. 1987). *See also Knight v. ILA*, 457 F.3d 331, 338-340 (3d Cir. 2006). Indeed, an attempt to extend trademark infringement claims to non-commercial uses, such as the ones that the APWU Members First slate have made, could also run afoul of the First Amendment. *Id.*; *Taubman v. WebFeats*, 330 F.3d 770, 774 (6th Cir. 2003).

  Dimondstein and his slate-mates have every right to call themselves APWU members, *Playboy Enters. v. Welles*, *supra*, and they have every right to use a slate name that succinctly describes their principal campaign platform—putting APWU members first. And, when they are out leafletting at the workplace, given the fact that members of different postal unions use the same



Exhibit 3

Printed on Recycled Paper

Darryl Anderson, Esquire
July 10, 2013
page 2

entrances, they need to be able to place the union's acronym prominently on their literature so that workers receiving the literature can see, in one quick glance, that the piece of paper is aimed at them, not at letter carriers or mail handlers or NAPS members, not to speak of the many non-members. And there is no likelihood that any union member seeing the slate name "APWU Members First" would imagine that the union entity sponsored the slate. Indeed, it is quite common in the labor movement for reform groups and reform publications to include the union's name. Teamsters for a Democratic Union is the best known example, but other such names include BLET Members for Democracy; Cingular CWA Members; Concerned ILA Members; NYSNA Nurses for Unity; AAM Local 424; UAW Crisis; IATSE.org; IBEW Friend and Family Networks; IBEW Tramp Guide; IBEW Minuteman; IBEW Alternative; ICEUFTblog.blogspot.com; ILA Rank and File; The AFM Observer; IUOE Watch; MEBA United; SAG Watchdog; SEIU Local 888 Members Democracy Campaign; SEIU Members Active for Reform Today; Steelworkers Fight Back; Teamster Retiree Coalition of NY State; Teamster.net; UBC Members Discussion List; TWULocal100.com, and the UTU Bus Caucus. Similarly, although to my knowledge no union reform group has ever been sued for using a union's name in its domain name, a number of cases have held that placement of a trademark in the domain name for a web site that comments on the trademark holder does not contravene the trademark laws. Given that Dimondstein is in the Fourth Circuit, *Lamparello v. Falwell*, 420 F.3d 309 (4th Cir. 2005) might be the most relevant, but other cases include *Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045 (10th Cir. 2008); *Bosley Medical v. Kremer*, 403 F.3d 672 (9th Cir. 2005); *TMI v. Maxwell*, 368 F.3d 433, 436-438 (5th Cir. 2004); and *Taubman v. WebFeats*, 319 F.3d 770 (6th Cir. 2003).

Similarly, the decisions about union elections under Title IV of the LMRDA allow candidates to use the union's trademark on their literature so long as the use does not imply union sponsorship. Generally speaking, an insurgent candidate's use is unlikely to lead to a finding of improper use. *Solis v. TWU Local 234*, 855 F. Supp. 2d 329, 337 (E.D. Pa. 2011) (challenger whose campaign materials showed him standing in front of the union logo "did not reflect the appearance of union support"); *McLaughlin v. Musicians*, 700 F. Supp. 726, 736 (S.D.N.Y. 1988) (where local union officer used national and local union logos on letters to support a challenger for the office of national president, use of the national logo did not violate the LMRDA, given that the letter's content did not imply an endorsement by the national union and that the identity of the author and the dynamics of the race made it unlikely that anyone would infer such an endorsement; but use of logo of the entity where the sender was the incumbent leader **was** improper on the facts of that case).

Finally, the election rule that your demand letter cites does not, on its face, prohibit what the APWU Members First slate has done. By its terms, the rule applies only to the "logo or stationery,"[1] and the APWU Members First slate does not use the logo — the acronym in a stylized font, like so: **APWU** — but only the acronym itself. Several intra-union candidates have used leaflets employing

---

[1] "No Union logo or stationery may be used in campaigning for or against a candidate. This includes using any Union logo for campaign related purposes, including press conferences."

Darryl Anderson, Esquire
July 10, 2013
page 3

the union's marks, and, indeed, there is a non-official organization of local union officers, the American Postal Workers Union National Presidents' Conference, that includes the APWU name in its own acronym, as well as in its domain name, although it is scrupulous not to use the logo.

When you wrote to me on June 21, you told me that you had, in the past, "sent a number of demand letters to insurance marketers and the like demanding that they stop using the APWU trademark." I'd be willing to look at the demand letters to which you refer in judging your arguments, but that sort of enforcement is irrelevant to the issue before us, because, as you describe them, these were commercial uses by outsiders with no claim to the right to identify themselves truthfully as APWU members.

In your correspondence to me, it appeared that you understood that, applied to **any** use of the union's marks and not just the logo, the union's rule would be unlawfully overbroad; therefore, you told me, the union only objects to the use of the name in the slate name and domain name. However, nothing in the rule gives notice that it extends to the union's non-stylized name, and that it extends only to slate and domain names. Apart from when a rule thus limited would be valid, had the rule been so limited on its face, while clearly applying to the acronym and not just the stylized lettering, the slate might well have selected a different name, to avoid the possible need for litigation to protect their free speech rights. But you announced this specialized interpretation of the rule, apparently tailored precisely to disadvantage this slate, six weeks into the campaign after the slate had been announced, and after the slate had printed and widely disseminated its campaign literature. Moreover, although you told me that you originally sent the letter entirely on your own, and without any consultation with or authorization from the union's elected officials or its incumbent-selected election committee, we cannot help noticing that your demand letter favors one side in the election —the side that was aware of the secret interpretation that you assert is longstanding.

Consequently, Dimondstein and his slate will stand on their rights. They are not willing to surrender their right to identify themselves squarely with the APWU membership in both their slate name and their web site's domain name. We hope that the incumbent leadership will not choose to divert the members' money into litigating the members' right to correctly identify their slate and their web site using the letters "APWU." But if litigation is what it takes, we are prepared to go that route.

Sincerely yours,

Paul Alan Levy



## American Postal Workers Union, AFL-CIO

1300 L Street, NW, Washington, DC 20005

July 15, 2013

Anthony Turner
Chairperson
Election Committee
1300 L Street, NW
Washington, DC 20005

Re: *Use of APWU Logo*

All Candidates:

I have received an inquiry in regard to the use of the APWU Logo or the American Postal Workers Union name in campaigning for or against a candidate, including the use of any APWU Logo for campaign-related purposes.

Please be advised that it is a violation of the *Rules and Regulations Governing 2013 APWU National Elections* for any candidate to use the APWU Logo in campaigning for or against a candidate, including the use or any APWU Logo for campaign-related purposes.

<u>Please be further advised that any use of the APWU Logo in campaigning for or against a candidate, including the use or any APWU Logo for campaign-related purposes, should be immediately discontinued</u>.

The *Rules and Regulations Governing 2013 APWU National Elections, Section VII. Campaigning and Union Publications, Election Committee, Rule B. 7*, specifically states:

> 7. ELECTION COMMITTEE RULE: APWU National, State or Local Union property and resources, including but not limited to, Union offices, computers, web-sites, telephones, automobiles, supplies, and printing and reproduction equipment may not be used for campaigning. Union property cannot be used for posting, storage, or distribution of campaign literature, for campaign meetings or campaign press conferences. Union funds may not be used to rent property or meetings rooms for such activities. No Union logo or stationary may be used in campaigning for or against a candidate. This includes using any Union logo for campaign-related purposes, including press conferences.

Each candidate was provided a copy of the *Rules and Regulations Governing 2013 APWU National Elections* by certified mail. In addition, the *Rules and Regulations*

# Exhibit 4

Each candidate was provided a copy of the *Rules and Regulations Governing 2013 APWU National Elections* by certified mail. In addition, the *Rules and Regulations Governing 2013 APWU National Elections* was printed in the March/April issue of the American Postal Workers and mailed to each member of the APWU.

The above-referenced rule as it applies to National, State and Local Union Property has applied in each APWU National Election since 1995.

Please respect and adhere to the rules and regulations governing the 2013 APWU National Elections.

Sincerely,

*Anthony Turner*

Anthony Turner
Chairperson
Election Committee



## American Postal Workers Union, AFL-CIO

1300 L Street, NW, Washington, DC 20005

August 19, 2013

**Sent First Class Mail & Certified Mail – Return Receipt: 7013 0600 0002 2315 5522**

Mark Dimondstein
Members First Team
2518 Burgundy Drive
Greensboro, NC  27407

**RE: NATIONAL ELECTION APPEALS COMMITTEE CASE NO: 13-NO-24**

Dear Brother Dimondstein,

The NEAC acknowledged receipt of an appeal on August 2, 2013 and assigned it Case No. 13-NO-24. The appeal alleged that the Members First Team has continually used the APWU Logo and trademark on its campaign literature, buttons, website, and Facebook pages.

The National Election Appeals Committee (NEAC) has determined that the use of the APWU trademark in conjunction with the Member First Team is in violation of the APWU National Election Rules as cited under the Rules and Regulations Governing 2013 APWU National Elections, Election Committee Rule VII.B.7, which states, in part:

> ". . . No Union logo or stationery may be used in campaigning for or against a candidate. This includes using any Union logo for campaign related purposes, including press conferences."

In addition, under the "APWU Guidelines Governing the Creation of a Homepage. . ." states under the section entitled, "Trademark Law", the following:

> Trademark law protects the APWU name and logo that represent our Union. The APWU policy on the use of APWU resources governs the appropriate use of the APWU name and logo.

In a letter dated, July 15, 2013, Anthony Turner, Chairperson Election Committee, advised all candidates, that the use of the APWU Logo or the American Postal Workers Union name in campaigning for or against a candidate is in violation of the Rules and Regulations Governing 2013 APWU National Elections. (See copy of letter attached).

# Exhibit 5

August 19, 2013
Page 2

Additionally, you received a letter, dated June 18, 2013, from Darryl J. Anderson, (O'Donnell, Schwartz & Anderson) Counsel for the APWU. (See attached).

Please be aware, that if any member of the Members First Team is successful in the election, we will immediately seek to begin the process to rerun the election if not corrected.

Yours in Union Solidarity,

Michael O. Foster
National Election Committee
Chairperson

MF:yc
opeiu #2//afl-cio

Attachments (1)

cc: Members of NEAC