IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


MARK DIMONDSTEIN, ET AL.,
                                        CA No. 13-1228
         Plaintiffs,                    Washington, DC
                                        August 13, 2013
      vs.                               1:07 p.m.

AMERICAN POSTAL WORKERS UNION,

         Defendant.
_____



TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE




APPEARANCES:

For the Plaintiffs:             Paul Alan Levy, Esquire
                                PUBLIC CITIZEN LITIGATION GROUP
                                1600 20th Street, NW
                                Washington, DC 20009
                                (202) 588-7725
                                plevy@citizen.org


                                Jehan A. Patterson, Esquire
                                PUBLIC CITIZEN LITIGATION GROUP
                                1600 20th Street, NW
                                Washington, DC 20009
                                (202) 588-1000
                                jpatterson@citizen.org

```
For the Defendant:          Darryl James Anderson, Esquire
                            O'DONNELL, SCHWARTZ & ANDERSON
                            1300 L Street, NW
                            Suite 1200
                            Washington, DC 20005-4126
                            (202) 898-1707
                            danderson@odsalaw.com




Court Reporter:             Lisa M. Foradori, RPR, FCRR
                            Official Court Reporter
                            U.S. Courthouse, Room 6706
                            333 Constitution Avenue, NW
                            Washington, DC  20001
                            (202) 354-3269
```

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1                       P R O C E E D I N G S

2              THE COURT:  All right.  I'm ready.

3              COURTROOM DEPUTY:  This court is now in session.

4    Civil Case 13-228, Mark Dimondstein, et al. versus American

5    Postal Workers Union.  Counsel, would you please identify

6    yourself for the record.

7              MR. LEVY:  For plaintiffs this is Paul Allen Levy

8    for Public Citizen.

9              MS. PATTERSON:  And also Jehan Patterson for Public

10   Citizen.

11             MR. ANDERSON:  Hello.  This is Darryl Anderson for

12   defendant, American Postal Workers Union.

13             THE COURT:  All right.  This is Judge Kotelly.  I

14   have a court reporter here, so the conference call will be on

15   the record.  I'm calling about setting up a schedule.  What I

16   would ask is -- I have some questions and then I'll call on

17   you to give answers.  If you would then give your last name so

18   we ascribe the comments to the correct individuals.  And I'd

19   ask that you -- I'll give you a chance at the end to raise any

20   issues you want -- not to speak at the same time and please

21   listen if I interrupt you in order to move to another topic.

22             This relates to a preliminary injunction that

23   requests that the defendant union comply with the plaintiff's

24   request to send campaign literature via e-mail at plaintiff's

25   expense, to put it in very simple terms.

1              The one question that I had is the timing of this

2     from the defendant's perspective.  Is there a particular

3     timeframe that -- the materials seem to indicate that it's

4     expected around September 10th that the campaign material

5     would be going out.  I set that -- I'm trying to find the

6     timeframe in order to figure out --

7              MR. ANDERSON:  I want to say September 15, but I'm

8     not sure I'm right about that.

9              THE COURT:  Excuse me, sir.  Remember what I said.

10             MR. ANDERSON:  I'm sorry, Anderson.

11             THE COURT:  Mr. Anderson, so you think it's around

12    September 15th it would go out?

13             MR. ANDERSON:  Yes.

14             MR. LEVY:  I assume that what Mr. Anderson means is

15    that that's the date he expects the balance to be mailed?

16             MR. ANDERSON:  Yes.

17             THE COURT:  All right.  Then I'm just trying to get

18    a sense of -- obviously a decision would have to be made

19    before that to allow some time so that actually -- if I

20    granted it to be implemented or not.

21             So the other questions I had -- I guess one of the

22    questions I would need to know from the defendants, assuming

23    that they would need to go out around September 15th then,

24    when would you need to know the answer -- by how much

25    additional time would you need to know?

1          MR. ANDERSON:  I don't know the mechanics of this.

2     One of the things that is going on here, Your Honor, is that

3     the APWU, being postal workers, communicates with its members

4     by letter primarily, and it doesn't try to maintain an e-mail

5     list for purposes of general communication.  So, what the

6     plaintiffs are -- and let me just add that we have two

7     separate -- we have two e-mail lists we do maintain.  One of

8     these is what we call an e-alert and is issued only for

9     legislative matters exclusively, not for general

10    communication.

11         The other one is a much smaller e-mail list of

12    about 4,000 people which is about 10 percent of our -- we're

13    all retirees -- that is about 10 percent of our retirees that

14    we have e-mail addresses for.  Those people are sent a

15    publication that the APWU does not itself prepare.  I mean,

16    it's prepared by an outside group and it pertains to retirees

17    generally.  That is about 4,000 people.  So we have those two

18    e-mail lists that we use.  Other than that we have e-mail

19    addresses in a database.

20         And now for reasons that we'll explain to the Court

21    when we file our papers, the e-mail list that we use for our,

22    what we call our e-alert team, which is our legislative alert,

23    we want to protect that, and don't want to use it for

24    extraneous things other than just legislative alerts.  So that

25    is another matter.

1              But we do have a database of e-mail addresses for a

2    number of members, and I think that number is around 27,000.

3    That is an estimate from our IT department.  But that is not a

4    list, that is a database -- that is an estimate of e-mail

5    addresses in our database.

6              THE COURT:  Okay.

7              MR. ANDERSON:  So they are asking us to create a

8    list is what they are asking.

9              THE COURT:  So let me, without getting into sort of

10   the merits of it -- what I was trying to do is do a schedule

11   and then I have a couple of things to raise.

12             MR. ANDERSON:  Of course.

13             THE COURT:  So you at this point have no sense of

14   how much advance notice you would need to be able to do this.

15             MR. ANDERSON:  Your Honor, I'm not technologically

16   very adept or knowledgeable, but I have talked to the manager

17   of the IT department, and, you know, I think that it is

18   possible electronically to cull from our database a list of

19   e-mail addresses.  I mean, I think that can be done; I don't

20   think that it is extremely time consuming.  So I would think

21   that, you know, if we knew by the end of August certainly, and

22   probably even by the end of the first week of September, if we

23   knew, you know, that this was going to be required of the

24   union, we could have their IT department pull something

25   together.  And whether that -- you know, there may be

1   qualifications and refinements.  So I would think that we'd

2   better, we'd better shoot for the end of August if we really

3   want to have them to have time to do that.

4          It may be that plaintiff's counsel has a better

5   idea than I about these things.  That would be just my ball

6   park guess.

7          MR. LEVY:  Levy.

8          THE COURT:  Excuse me.  Hold on.

9          MR. LEVY:  Sorry, Your Honor.

10          THE COURT:  Let me then talk about a couple of

11   other things.  One of the questions is it looks like the

12   underlying complaint is pretty much the same thing as the

13   preliminary injunction.  So, one possibility would be,

14   obviously on an expedited schedule, would be if the parties

15   are amenable to simply rolling this into a motion on the

16   merits, not do it in the context of a preliminary injunction,

17   but basically just focus on the merits of the case and do the

18   briefing around that.

19          It doesn't seem to me to make -- it doesn't look

20   like you need discovery or anything.  It looks like it's a

21   very discrete issue, whether it's the underlying complaint or

22   whether it's the preliminary injunction, and then we would not

23   discuss it in the context of factors but would focus strictly

24   on the merits which --

25          MR. LEVY:  Levy -- I'm sorry, Your Honor, I didn't

1   want to interrupt.

2            THE COURT:  Well, now you can.

3            MR. LEVY:  I'm sorry, Your Honor.  We don't have

4   the facial cues as if we were standing in front of you.  So I

5   apologize for the -- I think that is the right way to go by

6   and large, you know, particularly because, you know, we've

7   made the argument that in a case like this the likelihood of

8   success is really the most important issue in any event.

9            The one reservation I have is to the extent that

10  there's some -- I might want to get some information from

11  their database people.  What my database people tell me, and

12  Public Citizen maintains a variety of e-mail lists for

13  communication with its members and supporters, I'm told by our

14  people -- of course, it depends on how their database is

15  maintained -- that it's almost like pushing a button to cull

16  e-mail addresses out of a database and dump it into a form

17  that could be used for transmission.

18           The concern I have about the timing that's being

19  discussed is that under the LMRDA candidates have the right to

20  do multiple mailings.  And although we would like to do at

21  least one mailing before the ballots go out, you know, there's

22  a campaign period going on.  Of course, we'd like to make

23  mailings as soon as possible recognizing that, you know,

24  litigation realities being what they may, we can't have it

25  immediately.  So --

1          THE COURT:  I'm not sure what the bottom line is

2     from your discussion as to whether or not you think it's

3     workable.  I mean, clearly there is a legal issue --

4          MR. LEVY:  I do think it's workable, Your Honor.

5          THE COURT:  Okay.

6          MR. LEVY:  I'm sorry that I wasn't clear.  I do

7     think it's workable to do it that way.

8          MR. ANDERSON:  May I --

9          THE COURT:  Defense counsel -- can you all just

10    wait?  This is the problem doing telephone conference calls.

11    I do this as a courtesy as opposed to dragging you down here.

12    Don't make me regret it.

13         MR. ANDERSON:  Thank you, your Honor.

14         THE COURT:  So, defense counsel, from your

15    perspective do you see issues in terms of trying to do it on

16    the merits?  I'm willing to do it as a PI, just in looking at

17    it, it seemed to make more sense frankly to set it up as --

18    you know, since it's really one discrete issue either way, to

19    just focus on the merits and not do the rest of it.  But if

20    you think there's some other aspect of this, then, you know,

21    we can -- we'll obviously have to do this fairly quickly if

22    the one that they are focusing on would be the initial one

23    which would be going out on the 15th.

24         And I would certainly require the defendant in

25    either case to go back and find out what -- you know, what is

1   actually involved technically in terms of doing it, whether

2   it's the push of a button or something else.  And my

3   assumption from listening to plaintiff's counsel is that the

4   expectation or the hope would be that the e-mail addresses in

5   the database would be what is used -- the greater listing.

6          So, am I correct about that -- this is just a yes

7   or no -- plaintiff's counsel?

8          MR. LEVY:  Yes.

9          THE COURT:  So back to the defense counsel about

10  whether you want to do this as on the merits only.

11         MR. ANDERSON:  Your Honor, yes, I think the answer

12  is yes with one caveat.  And here is what I would prefer.  I

13  prefer that defendant file a motion for summary judgment with

14  briefing and that it be treated as -- that there be an oral

15  argument on motion for summary judgment and then -- it may

16  well be that based upon the court's ruling that there would

17  be -- and the plaintiff's motion for preliminary injunction.

18  The reason I say that is that --

19         THE COURT:  Let me clarify something for a moment.

20         MR. ANDERSON:  Yes.

21         THE COURT:  You would be doing a motion for summary

22  judgment in place of their preliminary injunction?

23         MR. ANDERSON:  No.  I would actually submit that

24  both motions could be heard the same day, Your Honor.

25         THE COURT:  Let me just -- don't make an assumption

1    there is going to be a hearing, okay.  I do hearings if I read

2    the materials and I think I have a question about it.  I

3    expect you to put everything in the pleadings for me to make

4    an actual decision.  This is a very tight schedule that has

5    been set out, no matter how you do it.  So it seems to me that

6    in terms of doing it you need to leave me enough time to be

7    able to make a decision.  And I don't automatically set oral

8    arguments; I set them when I need to actually know something.

9    So let's leave the oral argument out of it for a second.  I'm

10   not sure why you would want to do a motion for summary

11   judgment in terms of doing this at the same time as the

12   preliminary injunction, but, you know --

13              MR. ANDERSON:  Are you asking me to address it?

14              THE COURT:  I'm asking defense counsel for the

15   reason.

16              MR. ANDERSON:  Okay.  Thank you, Your Honor.  This

17   is Anderson.  Yes.  My reason, Your Honor, is that the

18   plaintiff's argument here is -- really takes off from the

19   requirement of providing an address list, but it really is

20   unprecedented in that it would require the defendant union to

21   create an e-mail list.  It may not be hard do that, but still

22   that's not necessarily required by law.  The union doesn't

23   have that list and doesn't use it.  And so it's a creative

24   argument and, you know, maybe the law will go there, but it is

25   not there yet.

1          THE COURT:  Okay.  Let me ask defense counsel

2     something.  Let me interrupt.  As I understand it -- just a

3     minute.  As I under I understand it you have a database which

4     has all of the e-mail addresses in it; is that correct?

5          MR. ANDERSON:  Yes.

6          THE COURT:  So --

7          MR. ANDERSON:  Well, excuse me, Your Honor.  It

8     depends on what you mean by "all."  We have 27,000 out of

9     about 200,000.

10          THE COURT:  Okay.  But it has a listing of the

11     three things you've mentioned.  One, it's used exclusively for

12     legislative matters; the other one, has about 10 percent; and

13     this one has a database which -- with e-mails in it.

14          And the question that I have is, which you would

15     need to find out, is how -- whether you're actually -- it's

16     there and it doesn't really require much of a creation, or

17     whether it is actually means culling information out and doing

18     something that requires some time.

19          MR. ANDERSON:  Well -- Anderson.  May I speak, Your

20     Honor?

21          THE COURT:  Yes, go ahead.

22          MR. ANDERSON:  An issue in my mind is where these

23     e-mails were obtained.  For example, it may require some

24     culling because, for example, the people on our legislative

25     alert system, when they -- some of them who signed up for that

13

1    were signed up on a forum that tells them that the purpose for

2    the e-mail is to receive legislative alerts.  And we think

3    that's highly pertinent to whether that should be used for

4    political campaigning within the union.  So it may well be

5    that of the 27,000 e-mails, some of those may have been

6    obtained under conditions that would be pertinent to whether

7    they should be used this way.  So it might take some culling.

8    I'm not sure about that.

9         THE COURT:  So if I understand your argument, one

10   possibility of an issue is that out of the database which has

11   approximately 27,000 e-mails, some of these would be the

12   legislative matters where people have given their e-mails with

13   the understanding they are only going to get legislative

14   matters.  Is that what you're saying?

15        MR. ANDERSON:  That's correct, Your Honor.

16        THE COURT:  Let me ask -- move to a couple of other

17   things.  As I understand it, are plaintiffs planning on

18   requesting that the campaign literature be sent by mail as

19   well as e-mail?

20        MR. LEVY:  The plaintiffs intend to send a mailing,

21   a postal mailing, eventually, but they want to be able to send

22   multiple and indeed segmented e-mailings; that is to say,

23   e-mailings to different interest groups to the extent that

24   that's possible.  That is to say, within the postal workers

25   unit there are people who drive, there are people who work in

1   postal services and post offices and so forth.  So there are

2   various things, and then actually there are officers who run

3   for various positions, although they all, as I understand it,

4   they run at-large.

5            THE COURT:  Let me interrupt for a second.

6   Precisely who is it that sends out -- lets just do the mailing

7   at the present.  Who sends out the actual mailings to the

8   members?

9            MR. ANDERSON:  This is Anderson.  May I respond,

10  Your Honor?

11           THE COURT:  Yes.

12           MR. ANDERSON:  The American Postal Workers Union

13  has already mailed 300-word statements from all the

14  candidates, including the plaintiff, the three plaintiffs

15  here.  It has already mailed 300-word statements of every

16  candidate to every member.

17           THE COURT:  Okay.  But --

18           MR. ANDERSON:  At no cost to Mr. Dimondstein.

19           THE COURT:  I understand you're telling me that.

20  But what I asked you was, is that -- is the usual procedure

21  for mailings -- I'm just talking about postal mailings -- is

22  the usual procedure that the union, the defendant in this

23  case, actually mails them out?  Is that correct?

24           MR. ANDERSON:  It's done by a contractor, Kelly

25  Press, Your Honor, that maintains the mailing list, yes.  It's

```
 1    at the expense of the candidate.

 2              THE COURT:  Okay.

 3              MR. ANDERSON:  What I just described was --

 4              THE COURT:  Stop it.  I'm going to hang up on you

 5    all and make you come down if you continue this way.

 6              MR. LEVY:  I'm sorry, Your Honor.

 7              THE COURT:  I'm going to give you all a chance to

 8    talk.  You're making it very difficult for the court reporter,

 9    and I have a sentencing shortly, and I'm just going to set a

10    schedule I want without consulting you if you cannot follow my

11    rules.

12              All right.  Now, what I'm trying to figure out is

13    just to figure out in terms of a step-by-step, all right?  So

14    as I understand it, the union, and the union is the one to

15    answer this to start with, the union does mail out, whether

16    you do it through a contractor or otherwise, mails out the

17    campaign literature.  That is the system that has been set up.

18    Is that accurate?

19              MR. ANDERSON:  Yes, Your Honor, but I feel -- this

20    is Anderson -- I do feel I should add that it is at the

21    candidate's expense.

22              THE COURT:  That was my second question.  All

23    right.

24              Would you agree with that, Mr. Levy?

25              MR. LEVY:  Yes.
```

1            THE COURT:  Okay.  Then moving to the second, is it

2    the plaintiff's request that in addition to the union, whether

3    contract or otherwise, sending out the postal mailing at your

4    expense, that they then also do an e-mail, sending out the

5    material through e-mail, at your expense which I take it would

6    include if they had to create something to send it out?

7            MR. LEVY:  Yes.  And we are, it seems to me that

8    under the law it is their discretion whether they want to do

9    this internally or through a mail house.  I think an e-mailing

10   house probably works best for everybody's interests so nobody

11   complains that it's been sort of messed around by officials

12   and so forth.  And, in my experience, generally these things

13   are done by mailing houses for just those reasons.

14           THE COURT:  Who was that talking?

15           MR. LEVY:  I'm sorry, Your Honor, Levy -- for just

16   those reasons.  This was plaintiff's counsel responding to

17   your question.

18           THE COURT:  All right.  So let's see if we can

19   recap.  The mailings go out at the expense of the plaintiffs,

20   it's done through a contractor but it's on behalf of the

21   defendants, so the defendants control how it's done with the

22   contractor and they send out the postal mailings.  If somebody

23   disagrees with that, speak up; if not, don't say anything.

24           Okay, nothing.

25           So then let's move to the e-mails.  The e-mails,

1  what the plaintiffs would be proposing, would be that if the

2  e-mails -- you would pay for the actual, with the contractor,

3  whomever, would need to do this, you would pay for the e-mails

4  going out, which would include -- and that's what I'm

5  asking -- include if they had to take the database, create a

6  list, or do something else, it would be all expenses

7  associated with it.  Is that what you're saying or not saying?

8         MR. LEVY:  Yes, Your Honor.  Excuse me, Levy.  Yes,

9  Your Honor.

10        THE COURT:  Okay.  So if you needed to have a

11  sorting through to take out, say the legislative people who

12  have not provided -- or some others who have indicated they

13  want -- they have given the e-mail to the postal service only

14  for discrete purposes which does not include campaign

15  material, that if that needed to be done with a database to

16  create a list, that you, plaintiffs, are then willing to pay

17  for this; is that correct?

18        MR. LEVY:  Yes, Your Honor, although -- Levy.  Yes,

19  Your Honor, although we would argue that sorting is not

20  required, and that's obviously something we would have to

21  brief.

22        THE COURT:  Well, what is not required?

23        MR. LEVY:  We do not believe that the fact that

24  union members gave addresses to the union for a specific

25  purpose excuses the union from distributing campaign

1   literature to those addresses simply because the reason for

2   giving the address was limited.

3            THE COURT:  Well, it depends on -- suppose the

4   e-mail user who gave it does not want to get campaign material

5   and gave the e-mail to the union with the understanding it was

6   to be used only for something in particular.  I mean,

7   presumably the union members could decide not to give their

8   e-mail address if they didn't want to.  And if they gave it

9   and they, you know, confined it to be used for a particular

10  purpose, I'm assuming you're not stating that that should be

11  ignored and you should just send it out even though that's not

12  the reason they gave the union their e-mail?

13           MR. LEVY:  Your Honor without seeing the form on

14  which the selection -- excuse me, Levy.  Without having seen

15  the form on which the election was made, I'm reluctant to say

16  more.  But I would say that sort of in the larger picture it

17  -- let's hypothesize that members gave their addresses to the

18  union and said, but I don't want to -- their postal mail

19  addresses to the union and said, but I don't want to receive

20  campaign literature, I would really be concerned about the

21  mischief that would be caused by a rule that said that unions

22  can secure from their members a statement that they don't want

23  to receive campaign literature by mail.

24           THE COURT:  He's not saying that, sir.  Mr. Levy,

25  he didn't say that they are precluded.

1          MR. LEVY:  Right.

2          THE COURT:  What they said is that someone may have

3     given their e-mail address with the understanding it was going

4     to be used for a specific purpose.  Certainly people may not

5     want to have their e-mail used for a lot of other things that

6     can -- that would come through.  But we're not getting into --

7     that is an issue that they will obviously have to take a look

8     at in terms of how it's done.

9          I'm asking you an issue and that is, Mr. Levy, are

10    you prepared, if it turns out that the database needs to have

11    a list created, in other words, somebody has to go through,

12    sort out who should get it, if there's issues about whether

13    people want to receive materials or don't want to receive

14    materials, are you willing to pay for that?

15         MR. LEVY:  Your Honor -- Levy.  Your Honor, yes, I

16    am, and I apologize for taking us too far into the merits.  I

17    simply wanted to indicate that we would reserve the legal

18    issue.  But I apologize for getting into it in the first

19    place.

20         THE COURT:  All right.  I take it that I am

21    correct, then -- and this is to the defendants -- that the

22    e-mail lists are not given out.  So, this would be a system,

23    if it was used, where the union would be the one that would be

24    sending out these notices; is that correct?

25         MR. ANDERSON:  I'm not sure how that would work,

20

1   Your Honor, because we haven't done it.  I suppose we could

2   turn over a group of email addresses to, you know, to a third

3   party to do this because -- and, frankly, I would be -- as

4   general counsel to the union, that is what I would advise them

5   is that I don't want anybody in the union, officers or staff,

6   to be responsible for it actually getting sent, you know, with

7   whatever the -- anybody, any plaintiff or the plaintiffs

8   wanted to send because but that's not appropriate.  I mean, we

9   don't want to --

10          THE COURT:  Well, let me interrupt.  All I'm asking

11  is, I assume you would treat e-mail the way you would treat

12  the postal mailing:  You receive the material, a third party

13  sends it out, right?

14          MR. ANDERSON:  Yes.

15          THE COURT:  So, presumably, a third party -- is the

16  plaintiff paying the third party or do you pay the third

17  party?

18          MR. ANDERSON:  The plaintiff, in the case of mail,

19  the plaintiff -- the third party is the contractor with the

20  union, but that third party has the obligation to do the

21  mailing as presented by the candidates, and the fee for this,

22  the cost of that is charged to the candidate.

23          THE COURT:  Okay.  So if you were doing an e-mail

24  presumably you could do the same thing, just for hypothetical

25  purposes, the third party would get whatever the material was

1    and would be sending it out.  Now, the third party -- the

2    question is, and we don't know the answer based on the record

3    I've got now as to whether it's a push of the button of the

4    database or whether you would actually have to create

5    something from it.

6              MR. ANDERSON:  Do you want a response to your

7    question, Your Honor?

8              THE COURT:  Yes.

9              MR. ANDERSON:  Yes.  And, again, I'm over my head

10   here technologically, and I -- we very much need to, and I

11   know the Court appreciates that from what the Court has

12   already said, that we very much need to protect the privacy of

13   the e-mail addresses.  So if they are to be provided to a

14   third party for this purpose, then we have to have tight

15   control, obviously, over how they are used and that they are

16   not shared with anybody else for any other purpose.  That's

17   all.  But we can do that.  I mean, there must be a way.

18             THE COURT:  Okay.  So let's get back to the -- in

19   terms of doing this, are you proposing that -- at this point

20   we have the preliminary injunction.  It doesn't sound like --

21   if you're filing a motion for summary judgment, it doesn't

22   sound like we're moving towards actually doing something on

23   the merits in terms of the preliminary injunction unless

24   plaintiffs are willing to withdraw that and just go with the

25   defendant's motion for summary judgment.  So that is the

1    question to the plaintiff.

2             MR. LEVY:  I would think that we want to move for

3    an order.  So wouldn't it be for us to move for an order on

4    the merits?  I'm a little concerned because obviously we have

5    this 56 -- it's not H anymore -- forgive me for not being up

6    on the current rule -- the statement of material facts -- it's

7    hard to do a statement of material facts when you haven't seen

8    the other side's affidavits, but we want the Court to issue an

9    order.  So I would think that we need to file a motion if

10   we're actually withdrawing our preliminary injunction motion

11   as opposed to having it treated as a motion for summary

12   judgment.

13            THE COURT:  I guess that is the question I'm trying

14   to get at, is if you're going to do it on the merits usually

15   it's the plaintiff who moves.  And I don't know whether

16   there's factual disputes in here and that's why you need to --

17   or there's some factual content here where there may be

18   disputes about it.  It doesn't sound like either side really

19   knows precisely how this database would operate.  So that's

20   something that obviously you need to find out.

21            But if the -- I'm trying to figure out what the

22   vehicle is going to be to present it to the Court.  Are we

23   doing a PI?  Are we doing a -- basically taking the merits

24   argument that the plaintiff has set out as the opening brief,

25   an opposition, and then a reply?  Or you could do -- you could

1    supplement -- the plaintiffs could supplement their merits

2    argument from the PI, you know, if they have additional

3    arguments that they want to make, and withdrawing the PI, and

4    then have an oppositional reply.  The other option seems to be

5    that the defendant is -- seemed to be suggesting they file a

6    motion for summary judgment as opposed to opposing the

7    preliminary injunction.

8              MR. ANDERSON:  May I?

9              THE COURT:  Yes, go ahead.

10             MR. ANDERSON:  Your Honor, I was trying to be

11   responsive to the Court's suggestion that we proceed on the

12   merits, but I do think that there may be issues of fact that

13   will bear on what -- plaintiffs have tried to present a very

14   abstract question, but it's not that abstract, and I think

15   that -- I think there will be factual issues that bear on

16   that, and whether they are disputed or not, I'm not sure.

17             At this point the plaintiffs have not revealed how

18   many e-mail addresses they have.  They could have already more

19   than that the union has, for all I know.  It seems to me that

20   bears on this issue, and we may want at some point before

21   final disposition on the merits to make a record on that.

22             THE COURT:  All right.  Well, let me just ask.

23   Plaintiffs, do you have any e-mail addresses?

24             MR. LEVY:  I know that the website -- excuse me,

25   Levy.  I know that the website that my clients maintain has a

1    CGI form in which they ask for e-mail addresses.  I don't know

2    the answer to the question whether any -- I mean, obviously

3    they have e-mail addresses for each other.  Whether they have

4    anything significant beyond that, I do not know.

5              It will be our argument that that's not relevant to

6    the question about whether my clients have made a reasonable

7    request.  But that's a matter for briefing.  Procedurally,

8    where this discussion is going makes me wonder whether the

9    sensible vehicle for accomplishing what we need to accomplish

10   is for the defendants to both oppose the motion for

11   preliminary injunction and file their own motion for summary

12   judgment to which we can respond both by replying to the

13   preliminary injunction opposition and opposing -- either

14   opposing summary judgment altogether or cross-moving for

15   summary judgment.

16             It may well be that in the end there are no factual

17   issues that are material, or it may be that there are and we

18   ultimately have to decide and ask Your Honor.  And I would

19   hate to impose two separate determinations.  It's obviously

20   preferable to decide the merits at the same time as the

21   injunctive motion.  But going that route allows both the

22   parties and the Court the option of deciding which vehicle is

23   appropriate when we get closer to D-Day.

24             THE COURT:  Let me just make a point here.  As

25   you've proposed it we have the preliminary injunction.  We

1  would then have an opposition filed by the defendants with a

2  motion for summary judgment.  The plaintiff would then file a

3  reply in opposition and then the defendants would file a

4  reply.  So you'd have three more rounds of doing this.  If you

5  can turn these around within 24 to 48 hours, this is fine, if

6  you want this out by the first week of September.  Otherwise

7  there's obviously some problem here in terms of, you know,

8  giving me enough time to be able to make the decision.  Unless

9  the plaintiffs are willing to have this decision made at a

10  later point and it doesn't -- you know, these e-mails do or do

11  not go out with this first mailing, it sound like there's

12  going to be a series of mailings.  Plaintiff?

13          MR. LEVY:  We're prepared to meet the schedule that

14  Your Honor sets.

15          THE COURT:  All right.  Defendant?

16          MR. ANDERSON:  I think that I would like to be able

17  to have this weekend to work on our papers, but we should be

18  able to file by Monday, the 19th.  I mean, I will certainly

19  make -- we can do that, we'll commit to do that.  And then the

20  next round should take less time.  So whatever the Court

21  orders.

22          THE COURT:  Your not going to be do this on Monday.

23  you're going to be doing this a lot earlier than that.  In

24  terms of -- if you'll give me a moment, I'll figure this

25  out -- in terms of getting this in in a reasonable way.  Hang

26

1    on a second.

2              Hello?

3              MR. LEVY:  I'm here, Your Honor.

4              MR. ANDERSON:  Anderson here.

5              THE COURT:  Just hang on for a second.  I'm going

6    to put you on mute so I can get my calendar together, okay?

7              (Discussion off the record.)

8              THE COURT:  Okay, the Court is back on.  In terms

9    of doing this so I actually -- because I have other matters as

10   well -- in order to be able to get all of this in and make a

11   ruling either the last week in August or the first week in

12   September -- and if I decided I needed a hearing, I would not

13   count on it, so you need to put all of your information

14   actually in your pleadings.  But I would see -- we have the

15   preliminary injunction.  I would see the defendant opposing

16   the preliminary injunction, filing their own motion for

17   summary judgment.  You would file it by August 16th at noon.

18             The plaintiff's reply to the preliminary injunction

19   and the opposition to the motion for summary judgment by the

20   19th, close of business.  The defendant would then file a

21   reply on the 21st by close of business.  That way I get it in

22   early enough that if I need to talk to you, I can, and if not,

23   I can get the opinion out and in the timeframe that you have

24   set out.

25             It also seems to me that as part of this you need

1    to have some discussion about -- one of the difficulties here,

2    is obviously how to interpret the provision that the

3    plaintiffs are relying on, but there is a practical question,

4    and that is about, you know, what is in the database, how do

5    you get the information from the database, I mean, how

6    complicated is it, and whether there are issues about simply

7    sending out campaign material for e-mails that sit in the

8    database.  And I think that's a technical question that I

9    don't think either side, frankly, knows.

10         So it would seem to me that whoever runs these

11    databases and whoever you've got at the other end, plaintiff,

12    you all need to have those people talk to each other to figure

13    out whether -- you know, technically what it is so I don't get

14    things that are differing views with no real basis in

15    knowledge.

16         The other question that I have is to the

17    defendants.  Let us assume that this can be done easily from a

18    practical perspective.  Do you have any other objection to

19    doing this, leaving out whether it's legally required or not

20    legally required under the regulation, what is the -- what is

21    your -- or I guess it's the statute -- is it a practical

22    problem that you've got with this?  I mean, if this could be

23    done simply.  If the plaintiff paid for all of this sorting

24    out, whatever needed to be done, is there -- from your

25    perspective, is there a problem?

1          MR. ANDERSON:  Well, bear in mind this is the

2    American Postal Workers Union -- Anderson speaking.  Bear in

3    mind, this is a the American Postal Workers Union.  As the

4    Court will learn, the officers of this union communicate by

5    letter and they don't use e-mail for these purposes or for

6    general communications.  And they will, as you also will see

7    in their pleadings, their responses, they get people

8    unsubscribing when people are aggravated by receiving e-mails.

9    And postal workers react that way.  Some locals, I'm told,

10   some locals tell the headquarters:  Don't e-mail us.  We don't

11   want to get e-mails.

12         So there is an institutional objection to this sort

13   of thing.  And, moreover, this is, as you also see in our

14   pleadings, this is the very Democratic union, and there is

15   ample communication alternatives.  So in terms of

16   reasonableness, I think the alternatives need to be weighed.

17   And we see this as (a) an intrusion, a change in culture

18   unwelcomed among postal workers and not required by law.  So

19   that is the way we see it.

20         THE COURT:  All right.  So I now have your

21   position.  All right.  So at this point the schedule I have

22   set out -- let me just see if there's anything else I needed

23   to ask you.  I don't see anything else.  I will send out an

24   order that sets out what is required for motions for summary

25   judgment.  One of the key parts to this is the material facts

1    that you claim are in not in dispute.  You need to set them

2    out in paragraph form, cite to a record in terms of what

3    you're relying on, and in opposing it you need to indicate

4    whether you agree or disagree by paragraph so I can figure out

5    what is disputed, what is not disputed.  If you're not

6    disputing something, just say that and that's the end of it.

7    If you are disputing something, you have to cite to a record

8    that indicates why the fact is not correct.

9            If you have a additional facts, you can add those

10   facts at the end.  What I don't want is a narrative where your

11   argument is in as part of the factual statements.  You can add

12   some additional ones that you think are material that have not

13   been considered, and obviously the defendants in their reply

14   can address that.  But this is going to be very important in

15   terms of making sure of this.

16           My biggest concern factually is that you're not

17   going to be accurate and neither one is going to know as well

18   as you should for me to make a decision as to how the

19   databases and how people have -- you know, the circumstances

20   under which they have provided the e-mail addresses, which is

21   one issue which probably the defendant knows more about than

22   the plaintiff, what is in the database and how to do it, you

23   know, if the list was required to be created, what would need

24   to be done to actually create a list.  Do you have to deal

25   with the issue that some people have indicated -- you know,

1    generally when you order something from stores and various

2    other things, you know, they ask if you want to give an e-mail

3    address.  You can say yes or no and you also can indicate you

4    only want to get something in particular and not other things.

5    And if you wind up getting what you asked for not to get, most

6    people just unsubscribe to the whole thing.

7              So one question would be is how, frankly, the union

8    has obtained these e-mails and whether there is some

9    restrictions or scope that the plaintiffs have indicated, even

10   if they have never opined one way or the other -- I mean, the

11   union members have never indicated way or the other about

12   campaign literature -- you know, how you've collected it.  And

13   then in terms of the database, how it works.

14             So I would ask that factually you have -- go back,

15   have your experts talk to each other and have some

16   discussions -- it may be that you can narrow down how it

17   actually would operate should the Court order it.  I'm not

18   suggesting I am.  But I would prefer to have something that

19   indicates what is involved -- can you -- is it just a matter

20   of taking all the e-mails in there, do you have to sort

21   through them, and what would have to be done.  And that really

22   requires somebody who knows something about the database and

23   obviously not the lawyers.  So I would ask that you do that.

24             And I will set this schedule out in an order.  If

25   in combination with the pleadings and the exhibits you attach

1  you have 25 pages or more, you need to give us a paper copy

2  for chambers.  We'll indicate it has to be delivered not

3  directly to chambers, but there is a place on C Street that

4  you leave it.  All of that will be put into an order.

5           Are there any other questions, Mr. Levy?

6           MR. LEVY:  I would only say that while we were on

7  hold with Your Honor, Mr. Anderson and I discussed exactly the

8  problem of conferring with -- of having our expert and counsel

9  confer with each other about the technical aspects, and I

10 think we both recognize that we need to do that.

11          THE COURT:  All right.  And if for some reason you

12 work something out, let me know so I don't do work I don't

13 need to.

14          And, Mr. Anderson, anything from you?

15          MR. ANDERSON:  Yes, Your Honor, two questions.

16 One, when we submit a courtesy copy, may I submit two copies?

17          THE COURT:  Yes, that's fine.

18          MR. ANDERSON:  Okay.  And I do not anticipate

19 working this out.  We will certainly try to work out the

20 technical details so that the Court isn't frustrated by a lack

21 of knowledge on that front.  We'll make everything we can to

22 make sure that we know how it would work if we have to do it.

23          THE COURT:  All right.  The other thing is, I don't

24 know whether, Mr. Anderson, that you've entered an appearance

25 or not.

1          MR. ANDERSON:  I have not, but I certainly will.

2          THE COURT:  If you would do so because, otherwise,

3    you're not going to get the order on ECF.

4          MR. ANDERSON:  Right.

5          THE COURT:  So if you would sign up and then

6    anything that the Court sends out, we'll get -- you'll get

7    through ECF.  And I assume you use ECF and know how to do it.

8          MR. ANDERSON:  Yes.

9          THE COURT:  So, you will get everything.

10         MR. ANDERSON:  Okay.

11         THE COURT:  Obviously, whatever -- you're going --

12   I'm not suggesting you're not docketing things, but paper

13   copies instead of our printing out several copies of this is

14   expensive from our perspective.  So that is why we require

15   that you do it in paper.  Okay, if there's nothing else, then

16   the parties are excused.

17         MR. LEVY:  Thank you, Your Honor.

18         MR. ANDERSON:  Thank you, Your Honor.

19         THE COURT:  Thank you.

20   END OF PROCEEDINGS AT 1:50 P.M.

21

22

23

24

25

C E R T I F I C A T E

I, Lisa M. Foradori, RPR, FCRR, certify that
the foregoing is a correct transcript from the record of
proceedings in the above-titled matter.

Date:_____                    _____

                                        Lisa M. Foradori, RPR, FCRR